SIMONS v. PAINE.†

(Court of Civil Appeals of Texas. San Antonio. Oct. 18, 1911. Rehearing Denied Nov. 15, 1911.)

1. CONTRACTS (§ 305*)—BREACH OF CONTRACT —WAIVER.

A contract for the digging of a well stipulated that, if the well did not furnish 1,000 gallons of water per minute at 350 feet, the contractor or the owner might nullify the contract. The owner knew nothing about water-bearing strata, but in response to a question of the agent of the contractor stated that the agent might proceed to finish the well, if he thought it would produce the amount of water contract-

ed for. The agent continued work, but the well when finished did not produce the requisite amount of water. *Held*, that the owner did not waive his rights to rely on performance of the contract, before the contractor could recover compensation under the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1398, 1399, 1467–1475; Dec. Dig. § 305.*]

2. WORK AND LABOR (§ 12*) — CONTRACTS — PERFORMANCE.

Where a contractor to dig a well of a specified capacity sued for the contract price without complying with the contract, and the evidence showed that the owner had made no use of the well, and had refused to accept it and to pay for it, there could be no recovery on a quantum meruit.

[Ed. Note.—For other cases, see Work and Labor, Cent. Dig. § 27; Dec. Dig. § 12.*]

3. CONTRACTS (§ 305*) — PERFORMANCE — WAIVER.

A contract for the digging of a well stipulated that the well should furnish 1,000 gallons of water per minute. The well dug did not furnish that amount, and the owner agreed to pay a specified sum for a flow of 800 gallons per minute, but the well when tested did not produce more than 650 gallons. *Held*, that the conditional agreement did not prevent the owner from insisting on full performance of the contract.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 305.*]

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Action by H. A. Paine against M. T. Simons. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

Guy Mitchell, Lewis & Austin, and E. P. Phelps, for appellant. Love & Channell, for appellee.

FLY, J. This suit was instituted by appellee against appellant, on a written contract or order as follows: "Edna, Texas, Oct. 15, 1909. Mr. H. A. Payne, Houston, Texas: Please enter our order for one complete pumping outfit. Consisting of one fifty horse power Columbus gasoline engine, one two stage Morris deep well pump, one twenty-four inch stoll pit fifty feet deep with lock joint on bottom to fasten pit to casing. Also one well three hundred and fifty feet deep with twenty feet of Standcliff screen to each hundred feet of well casing. One belt, twelve inches wide by five ply, eighty feet long. The above well and equipment to be finished and delivered to us running on our farm, situated 4 miles from Edna, four dollars per foot. Should we desire to have well deeper you are to do it for $4.00 per foot for first hundred feet and $4.50 for the next hundred feet or fraction thereof. Ship to: Rig to be on the ground on or before November 10, 1909. For which we promise to pay three thousand six hundred & fifty ($3,650.00) dollars, as follows: On completion of above conditions and stipulations. The above outfit is guaranteed to be of first class material and workmanship and to properly perform duties for which it is built. All payable at Houston,

Texas, with interest on deferred payments at 8 per cent. from date of shipment; 10 per cent. attorney's fees to be added if placed in the hands of an attorney for collection. This order is given subject to delays on account of strikes, fires, transportation companies or other causes beyond your reasonable control, and guarantee shall be the same as the printed guarantee of manufacturer. This order is subject to approval and acceptance of home office, at Houston, Texas. Title and ownership of above ordered goods to remain in you until paid for, including the liquidation of all notes given for deferred payments. Only the articles specified above are embraced in this order or figured in the price. There are no promises, agreements or understandings not expressed herein. [Signed] M. T. Simons. The price herein contemplates driller to furnish test well and should it be proven that there is not sufficient water for 1,000 gals. per minute at 350 ft. both parties have right to nullify contract."

The lines following the signature were added at the time the order was signed by appellant, by agreement of both parties. Appellant answered, denying appellee's compliance with the terms of the contract, that the well dug by appellee did not develop 1,000 gallons of water a minute, and that it was rejected and repudiated by appellant as provided for in the contract, and that appellee had admitted that the well did not meet the terms of the contract. The cause was tried without a jury, and judgment rendered in favor of appellee for $3,650, with interest at the rate of 8 per cent. per annum from March 1, 1910, and 10 per cent. attorney's fees.

The court found that the parties had entered into the contract; that a test well was put down by Nimmo, the agent of appellee, to a depth of 350 feet, and the agent told appellant about the well, and he replied that "if they thought the well would produce a thousand gallons when completed to go ahead and put it down; that both Nimmo and the driller thought that the water-bearing strata shown by the log of the test well would afford a thousand gallons a minute in the completed well; and that they thereupon proceeded with the drilling of the well." It was undisputed that the well when finished produced less than 800 gallons a minute, and appellant refused to accept it, and refused to pay for it. He has never used it. The court further found "that, after the refusal of M. T. Simons to accept the well because of its low production of water, W. J. Taylor, representative of H. A. Paine, made an agreement with defendant, Simons, by which the latter agreed to pay, without further delay or litigation, the sum of $3,000 for the well and machinery, if the well, upon another test, would produce 800 gallons per minute for 3 days run of 10 hours each. That such test was made, and the well failed to produce 800

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes.

gallons per minute, and the defendant refused to accept the well and pay $3,000, or any other sum." The court concluded that, because appellant told the agents of appellee to proceed with the final well if they thought it would afford 1,000 gallons a minute, he waived "his right to declare a forfeiture of the contract, and became bound to pay the contract price for the well upon its completion, as provided therein." He also held that the last contract as to 800 gallons a minute having failed, because the well did not meet the test, did not affect the original contract, and that appellant was liable for the full amount, as though the well produced 1,000 gallons to the minute.

[1] All of the testimony tended to show that it was the intention of the parties to have a well that would produce at least 1,000 gallons a minute, and when it was ascertained that it was not "so nominated" in the contract appellant insisted that it was the agreement, and the lines following the signature were then inserted by the agent of appellee. All of the facts and circumstances before, at the time, and after the signing of the contract demonstrate that a well producing a thousand gallons of water to the minute was intended by the parties. No one suggests that such a well was obtained, or that one producing anywhere near that amount was constructed; but the naked proposition is that, because a very aged man who knew nothing about "logs" of wells, or about water-bearing strata, said to the active, shrewd agents of appellee that they might proceed to finish the well if they thought it would produce the amount of water required by the contract, he forfeited all rights thereunder. Appellant had not seen the well, knew nothing about the amount of water it would produce, and did not waive any rights that he had under his contract. It was represented to him by the agent of appellee that the well would produce the required amount of water, and he said: "Well, just go ahead, and when the well is completed I have got a check for you; the money is ready to pay you as soon as the well is completed up to contract." On that agreement the well was completed. The contract gave either party, at the time the test well was completed, the power to declare the contract at an end; neither of them exercised that privilege, but appellant laid on appellee the burden, risk, and responsibility of finishing the well so as to produce the 1,000 gallons a minute. If there was a failure to produce that amount of water, as the whole evidence shows there was, appellee, and not appellant, should be held to bear the loss. He had, after the completion of the test well, assumed a voluntary new responsibility—that of finishing the well—and he took his chances on whether or not the required amount of water would be produced. He said it would be produced, and appellant agreed that if it was produced he would pay for the well. We fail to see any waiver of his rights by that agreement.

Afterwards, when appellee had failed to furnish the water he had agreed to furnish, he made another proposition, which was accepted by appellant, which was intended to take the place of the original agreement. Again appellee failed, and after the failure again took up the original contract, sued for the full amount, and obtained a judgment for it, with interest and attorney's fees. Appellee, upon being told by the younger Simons not to finish the main well contracted for him if he could not get a thousand gallons of water a minute, had desisted from going further, but under similar conditions and circumstances with appellant he proceeded with the main well, and desires, not merely a reimbursement for his outlay on the risk assumed by him, but full pay for work, under a contract which he made no pretense of having complied with.

[2] Appellant has never agreed to pay him for anything, unless he finished a well producing at least 1,000 gallons of water a minute, and the well finished by him did not produce more than 650 gallons a minute. The question of quantum meruit does not arise in the case. Appellee sued for the full original contract price, without complying with the terms of it, and obtained the judgment he sought. Appellant has made no use of the well, and there is no testimony to support a judgment on a quantum meruit.

[3] There was in fact no consideration whatever for the promise to pay $3,000 for a flow of 800 gallons of water a minute. Appellee did nothing further on the well after that agreement. He merely tested the well, and found it far below the standard fixed in the contract. He was not placed in any worse position by the conditional agreement to pay for 800 gallons of water a minute.

While not expressed in terms in the contract, it was shown that it was the intention of the parties that the well should produce at least 1,000 gallons of water a minute. That intention entered into and became a part of the contract. Nimmo, the agent and representative of appellee, said that either party could abrogate the contract if the test well failed to produce the required amount of water. No one but appellee knew whether the test well reached the requirement, and upon the statement of his agents that it did appellant did not waive any rights held by him under the contract, but he insisted on the terms of the contract being complied with, and reiterated his promise to pay if such compliance was made. Upon the theory under which this case was tried and won by appellee, appellant would have been bound to pay the full price for the well if it had not produced a gallon of water, because he did not at once, without knowledge of the facts, repudiate the contract, although told by appellee that the required amount of water had been obtained. Appellant told the agents that he knew nothing about logs and strata, and said, "I am looking to you folks for a well," and agreed to pay if the well when

completed produced a thousand gallons of water a minute. The log was never shown to appellant, but he relied upon the representations of the agents of appellee, and made them assume all the risk.

The judgment is reversed, and judgment here rendered that appellee take nothing by his suit, and that appellant recover all costs in this behalf expended in this, as well as in the lower, court.