**AMERICAN WATER CO. et al. v.
BUNGE et al.**

No. 11989.

Court of Civil Appeals of Texas.   Galveston.
June 10, 1948.

Rehearing Denied July 28, 1948.

Marion S. Church and W. F. Bane, both of Dallas, and G. F. Steger, of Columbus, for appellants. . ..

Miller & Rutta and Massey & Hodges, all of Columbus, for appellee.

CODY, Justice.

This was an action by appellees, Hollis Massey and Oscar Bunge, against appellants, American Water Company, a corporation, and against Howard P. Holmes and J. C. Crain, for failure to drill an irrigation well that would produce 2500 gallons of water a minute. Appellees also alleged negligence in drilling and equipping the well and also alleged fraud. Appellants Holmes and Crain were made defendants as being the purchasers of the business of appellant, American Water Company, and as having assumed all of its obligations. For convenience, the term "appellant" will hereafter be used ordinarily to refer only to the Water Company, as the other appellants had nothing directly to do with the case and came into it after the rights of the parties arising from the transaction had become fixed.

Appellees alleged in substance: That in July of 1945, appellee Massey leased approximately 200 acres of land near Rock Island in Colorado County to appellee Bunge for a term of five years for rice farming and that by the terms of their agreement, Massey was to cause an irrigation well to be drilled on the premises capable of producing not less than 2500 gallons of water a minute. That appellee Bunge agreed to furnish the pump and engine for "flowing" said well. That in July, 1945, Massey and appellant made an oral agreement by which appellant was to drill a test hole to determine the feasibility of drilling the irrigation well upon the understanding that Massey would pay $1.50 a foot for the test hole, the costs to be applied on the cost of drilling and completing an irrigation well capable of producing not less than 2500 gallons of water a minute should the test hole show that such an irrigation well could be drilled. That the cost of the irrigation well was to be $7.50 a foot for the portion thereof necessary to be drilled 24 inches in diameter and $6 a foot for the portion thereof necessary to be drilled 18 inches in diameter. That appellant drilled the test hole and represented to Massey that a 238 foot water-sand had been located which would produce in excess of 2500 gallons a minute. That relying on said representations, Massey authorized appellant to drill the well. That appellant drilled the well at the total cost to Massey of $5405.53 which was by him paid to appellant on August 30, 1945.

Appellees further alleged: That Bunge, relying on the representation that the well would produce 2500 gallons a minute, purchased the pump and other necessary attachments for the well from appellants and prepared the land leased from Massey for cultivation. That appellee Bunge prepared approximately 100 acres of land for the rice crop at a cost of $2.50 an acre and the cost of setting the pipe in the hole and expense of gasoline, diesel oil, etc., necessarily expended by him was of the reasonable value of $815.

Appellees further alleged negligence on the part of appellant in drilling the well and in the manner in which the casings were placed therein and that the well would not produce 2500 gallons a minute. Appellees allege that they did not discover that the well was defective and would not produce the water necessary for irrigation until the month of January or February which was the time when the pump was installed and the well was first tested.

Appellant pled a general denial and specially pled that in July, 1947, appellees or someone acting under them, with knowledge of the defective condition of the well, installed a water pump and began pumping the well for growing crops of rice until the

same were matured. That if any alleged defects or conditions with respect to the well existed, appellees waived same and accepted the well and became liable for the full contract price of the well and equipment.

Both appellees and appellant urged objections to the court's charge which were overruled and the case was submitted to the jury on seven special issues, which, as answered by the jury, were in substance: (1) That appellant, American Water Company, agreed with appellee Massey to drill a well that would produce 2500 gallons of water a minute. (2) That after the completion of the well said appellants' agent, Powell, stated to appellee Massey that the well would produce 2500 gallons of water per minute. (3) That said agent made the same statement to appellee Bunge. (4, 5) That appellees respectively relied thereon. (6, 7) That in such reliance respectively, Massey paid for the well and Bunge furnished the equipment for the purpose of irrigating a rice crop and preparing the land for growing a rice crop.

The court rendered judgment for appellees, upon the verdict and additional findings made by the court in support thereof, that Bunge recover $815 with interest thereon from March 17, 1946, and that Massey recover thereon $5405.53 with interest thereon from October 30, 1945, and costs of suit. Appellants predicate their appeal on sixteen points. In the event the case is reversed, appellees urge a cross-appeal based on the court's refusal to submit issues specially requested by appellees. Appellants' sixteen points have been grouped for discussion by us into five groups, and, as so grouped, present the following:

(1) That the jury's answer to special issue No. 1 to the effect that appellant, American Water Company, through its agent, Powell, agreed with Massey to drill a well that would produce 2500 gallons of water a minute is against the great weight and preponderance of the evidence.

(2) That there was no evidence that the statement inquired about in special issue No. 3 (that is, whether Powell stated "that said well would produce 2500 gallons of water per minute") was made to appellee Bunge before Massey paid the consideration for the irrigation well, but the evidence established to the contrary that said statement was made after Massey had so paid the consideration. That special issue No. 4, as submitted, assumed as true a controverted issue, namely that Powell made the statement "the well would produce 2500 gallons of water per minute." Further, that there was no evidence to support the jury's answer to special issue No. 4, and the court erred in submitting same because there was no evidence that Bunge ever communicated to Massey the statement inquired about in said special issue.

(3) That the court erred in rendering judgment for Bunge for any sum of money for damages because the evidence in support of his damages consisted only of his own testimony and therefore, though same was not controverted, because he was a party to the suit, it was a jury question as to what was the reasonable amount of his damages.

(4) That the evidence showed that the well was not valueless, and that same has been used by Massey and his vendee; that it was error for the court to render judgment for the full consideration paid by Massey to appellant.

(5) The evidence showed that Massey never offered to return any of the property for which he paid the American Water Company, though it was in his power to return some of same.

We overrule appellants' contention presented as their first point above. It is well settled "that only evidence which tends to support a judgment or a finding of fact may be considered, and all evidence favorable to the opposite contention should be disregarded". 3 Tex.Jur. 1090. Also, that "The verdict is usually regarded as conclusive if there is any evidence to support it." Id., 1093. Under the stated rule, we find that the evidence was sufficient to support the jury's findings in response to special issue No. 1, to the effect that appellant, through Powell (its president), agreed with Massey to drill a well that would produce 2500 gallons a minute. The substance of the evidence in support of the jury's answer to special issue No. 1 is as follows:

Powell, the president and agent of appellant, was informed by Massey and Bunge that they needed a well which would produce 2500 gallons of water a minute to farm the 200 acres on which they desired to raise rice. Powell told them he couldn't tell them until a test hole was drilled; and that he didn't want Massey to have the well drilled unless it would produce the water they wanted. It was then agreed that appellant was to drill a test hole at the cost of $1.50 per foot, which cost was to be transferred to the irrigation well in the event it was indicated by the test hole that an irrigation well would produce 2500 gallons a minute. The test hole was drilled, and a water-sand having a depth of 238 feet was encountered. Without detailing the evidence further, we find that it was sufficient to support the jury's answer to special issue No. 1. Indeed, the evidence would have supported an inference that, if the well had been skillfully drilled and equipped, it would have produced the specified 2500 gallons a minute. While there was evidence that it would produce as much as 1100 gallons per minute for a short time, the evidence would have supported the inference that it was a well that would produce for irrigation only between 400 and 500 gallons a minute.

A contract to drill a well that will produce 2500 gallons a minute is not performed by drilling a well that will produce 500 gallons a minute or less. Hall v. Nunn Electric Co., Tex.Civ.App., 183 S.W. 13; Simons v. Paine, Tex.Civ.App., 140 S. W. 855; and see Mitchell v. Boyce, Tex. Civ.App., 120 S.W. 1016. The drilling was completed about the end of August, 1945. The pump was not installed until in January or February, 1946, at which time the well was first tested. However, Massey made the final payment thereon on August 30, 1945, when the drilling was completed. Massey testified that he paid therefor because Powell told him that the well would produce the specified 2500 gallons a minute. Bunge testified that he purchased the pump, and prepared 100 acres of the land for the 1946 rice crop because Powell told him that the well would produce 2500 gallons a minute. And, as indicated above, the jury found in answer to special issue No. 2,

that, after the completion of the drilling of the well, Powell stated to Massey "that said well would produce 2500 gallons of water a minute". The jury also found in answer to special issue No. 3 that after the completion of the drilling, Powell told Bunge "that said well would produce 2500 gallons of water a minute." No contention is made that the evidence was not sufficient to support the answers to special issue Nos. 2 and 3. But by its points, which we have grouped and designated as appellant's point 2, stated above, appellant complains of special issue No. 4 on the grounds (a) that, as submitted special issue No. 4 assumed as true the controverted issue (being special issue No. 3) that Powell had told Bunge after the completion of the drilling "that said well would produce 2500 gallons of water per minute," and (b) that, as submitted, special issue No. 4 assumed that Bunge had communicated such fact to Massey. We overrule appellant's said points. Special issue No. 4 and the charge preceding it read as follows:

"If you have answered special issue No. 2 'yes,' then and only in that event answer the following special issue:

"Special issue No. 4. Do you find from a preponderance of the evidence that plaintiff Massey relied upon said statement made by said witness Powell *inquired about in the two foregoing special issues?*" (Emphasis supplied.) To which the jury answered "yes."

The purpose of special issue No. 4 was to have the jury find as a fact whether Massey relied on the statement made by Powell "that said well would produce 2500 gallons per minute." The court's charge instructed the jury not to answer the question unless special issue No. 2 had been answered in the affirmative. It will be noted that, with only such changes as were necessary to ask the same question relative to Massey, and relative to Bunge, special issue Nos. 2 and 3 were framed in identical language. It is manifest the court employed the words "inquired about in the two foregoing issues", used in special issue No. 4 in lieu of, and to identify the words "that said well would produce 2500 gallons of water per minute." Special issue No. 5,

made the same inquiry with respect to Bunge, which special issue No. 4 made with respect to Massey. In connection with special issue No. 5, the court instructed that it be not answered unless special issue No. 3 had been answered in the affirmative, and then asked if Bunge "relied upon said statement made by the witness, Powell?" Every special issue in the court's charge except special issue No. 1 referred to and identified the statement made by Powell "that said well would produce 2500 gallons of water per minute." In view of the fact that the jury were charged not to answer special issue No. 4 unless they had answered special issue No. 2 in the affirmative, and in view of the charge as a whole, the jury would not reasonably have understood from special issue No. 4, that the words "inquired about in the two foregoing special issues" were used with any other meaning than "that said well would produce 2500 gallons of water per minute."

The court did not submit any "damages" issues to the jury. He found from the undisputed evidence that Massey was entitled to recover $5405.53, being the amount of the consideration which he paid for the drilling of the well. He likewise found from the undisputed evidence that Bunge had sustained damages in the amount of $815 and rendered judgment for him against appellant for said sum. Appellant complains of the action of the court in finding the amount of damages awarded to Bunge in the points which we have grouped and designated above as appellant's point **3**. The only evidence to support the judgment awarding Bunge damages for $815 consisted of Bunge's testimony.

■ It is a general rule "that the testimony of an interested witness, such as a party to the suit, though not contradicted, does no more than raise a fact issue to be determined by the jury." Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 191, 166 S.W.2d 904, 908. This rule is subject to the exception "that where the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction,

inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law." Id.

■ Bunge testified that he paid $175 for the pump, and this testimony was supported by a cancelled check therefor. Such testimony related to a matter easily capable of rebuttal if not true. Powell himself testified that Bunge had paid for the pump, and didn't contest the amount. Such testimony comes within the exception above noted. Bunge testified that he had prepared 100 acres for the 1946 rice crop, and that the reasonable cost of so doing was $2.50 per acre. The land so prepared for the 1946 rice crop was open to inspection, and it was undisputed that appellant's agent had seen same. In a rice growing community such testimony could have been readily rebutted if it were not true. Such testimony also comes within the exception. Bunge further testified as to his expenses in testing the well, and in going to and from his home in Eagle Lake to where the land was located. He supported the labor costs, and expenses for gasoline, diesel oil, etc., with cancelled checks. He testified that the charges were reasonable. Such costs totalled $202.45. Such testimony also comes within the exception to the general rule, making the total of $627.45 of costs which were within the exception, consisting of $175 for the pump, $250 for plowing, etc., which, together with the stated $202.45 make $627.45.

■ Bunge further testified that the value of his time and labor in addition to the other costs he had itemized was more than enough to bring his total loss up to $815. There was no itemization as to the time he was claiming that he had put in, nor any testimony as to the value of his time. Such testimony was not accurate, and not readily subject to rebuttal in the form in which it was presented. It depended for its acceptance as being true to a large extent upon the credit which was given to Bunge as a witness. It did not qualify as coming within the aforesaid exception, and, though not contradicted, did no more than raise a fact issue for the determination of the jury. In other words,

the additional sum of $187.55 which the court awarded as damages, by fixing the amount of damages at $815, was not supported by that character of testimony, given by a party to the action, required in order to bring it within the province of the court to award the damages. We sustain appellants third point, and will reverse so much of the court's judgment as awarded Bunge $815, unless he files a remittitur in the sum of $187.55, as hereafter provided.

We overrule appellant's points, grouped by us and designated as appellant's points 4 and 5. Said points complain that the evidence showed that the well was not valueless but, to the contrary, showed same had been used by Massey and his vendee; and that the evidence further showed that Massey had not returned any of the property forming a portion of the well, though it was in his power to do so; and that it was error for the court to allow Massey recovery of the full amount of the consideration paid by him for the drilling of the well.

■ We have hereinabove cited authority to the effect that a party, contracting to drill a well which would produce 2500 gallons a minute, breached such contract by drilling a well that would produce only 500 gallons. That being true, Massey was under no legal obligation to pay appellant for the non-performance of the contract. Under the jury's findings, Massey paid for the well in reliance upon Powell's statement that the well would produce 2500 gallons a minute. Under the verdict, appellant had no right not to return the consideration obtained by it through the false representations of its agent. There was evidence from which it could have been inferred that the casing in the well had at least a junk value. The casing was attached to the realty. Whether in strictness of law the fixtures of the well became a part of the realty which became lost to appellant by becoming a part of the realty, we need not determine. A letter was introduced in evidence from Massey to appellant in which he requested appellant to pull the casing. Appellant never did anything about it.

■ The evidence showed that Massey sold and conveyed the land to a Mr. Burke, but retained title to the well in order to prosecute this action. In 1947, the parties were negotiating a settlement of their dispute. It was thought that a settlement might be worked out if Mr. Burke would buy the well. With the consent of both parties to the dispute, Mr. Burke used the well in the summer of 1947 (in conjunction with another well) to help make the 1947 rice crop. He found that it would make between 400 and 500 gallons a minute. He used it for a month, and refused to buy it. Such use of the well with the consent of appellant constituted no evidence of an acceptance of the well.

The judgment of the court will be affirmed except that portion thereof which awarded Bunge judgment for $815. The judgment awarding Bunge $815 will be reversed, and the cause remanded for trial as to him unless he files a remittitur in the sum of $187.55 within fifteen days from the date of the filing of this opinion. If said remittitur is so filed, the judgment in favor of Bunge will be reduced to $627.45, and as so modified the judgment will be affirmed.

### On Filing of Remittitur.

PER CURIAM.

On June 10, 1948, by opinion filed that date, this Court directed appellee Bunge to file herein within fifteen days from that date a remittitur in the sum of $187.55, and that if said appellee Bunge should fail to file such a remittitur, the judgment of the court below in his favor would be reversed and the cause—as to said appellee Bunge —would be remanded for a new trial.

■ It now appears to this Court that the said appellee Bunge has duly filed herein on June 15, 1948, his remittitur in the sum of $187.55. Therefore, the judgment of the court below will be reformed so as to award to the appellee Bunge only the sum of $627.45 instead of the $815 so awarded by the court below, and as thus reformed, the judgment of the court below will be in all things affirmed.

Reformed and affirmed.