**Pete M. WILLHOIT, Appellant,**

**v.**

**R. B. TAYLOR et al., Appellees.**

**No. 6431.**

Court of Civil Appeals of Texas. Amarillo.

Oct. 18, 1954.

Rehearing Denied Nov. 15, 1954.

Joe S. Moss, Post, for appellant.

Calloway Huffaker, Tahoka, for appellee.

MARTIN, Justice.

Appellant, Pete M. Willhoit, as plaintiff in the trial court, sued appellees, R. B. Taylor, Joe Taylor and Helen Taylor, wife of Joe Taylor, alleging that said parties were indebted to him in the amount of $2,512.50 for performance of a parol contract as to further deepening of a water well. Appellant had deepened an original well to a depth of 554 feet below the surface of the land and was paid for such drilling in full. This cause of action only involves appellant's claim that he had a parol contract with appellees which provided for their paying him $10 per hour for drilling the well below the depth of 554 feet. He also sought a recovery on quantum meruit. An original contract in writing as to the well drilling was executed between R. B. Taylor and one E. A. Kingsley. Later, F. A. Willhoit, father of Pete M. Willhoit, undertook to perform the obligations detailed in the Kingsley contract and executed the same contract after striking out the name of E. A. Kingsley. Pete M. Willhoit

was operating the drilling rig as owned by his father and the income was divided on a percentage basis.

Any recovery by appellant must be based on the written contract hereinabove mentioned or on the parol contract alleged to have been made between Pete M. Willhoit and appellee, Joe Taylor who is the son of R. B. Taylor. There is no proof in this record that Joe Taylor was the agent of R. B. Taylor as to any of the alleged transactions shown in the record. The well as drilled was intended for farm irrigation but was a dry well.

The material provisions of the written contract are as follows:

"* * * then the second party is to drill the hole in said well as deep as said first party shall require, not in excess of 550 feet at the rate of $5.00 per foot for such drilling * * * that such hole is to be 12 inches in diameter (across) and in the event it is necessary for the second party to reduce the size of the hole to less than 12 inches in order to dig, then and in such event the second party agrees to ream such hole out to such 12 inches and * * * it is further understood and agreed that the point of drilling such hole, for the purpose of determining the amount due, is the bottom of the present hole in the old well herein mentioned and such will be considered as the beginning point of drilling."

The written contract does not require appellant to drill the well to a depth of 550 feet but only requires him to drill said well "as deep as said first party shall require not in excess of five hundred and fifty (550) feet * * *." As to the depth required by party of the first part, appellant testified he was drilling the well under the contract, "Five hundred and fifty-four feet". Further, the contract is specific that the well shall be 12 inches in diameter and that the beginning point of drilling is the depth of an old well already on the land and shown to be 165 feet in depth.

The case was tried before a jury and on the close of the testimony, on request of appellees, the court directed a verdict in favor of the appellees. Appellant's two points assert that this was error as the evidence in the cause supported a judgment in his behalf. The judgment of the trial court must be sustained as to R. B. Taylor on the written contract and the undisputed record revealing the following facts. Appellant drilled the well in issue to a depth of 554 feet below the surface of the land. Under the stipulation in the contract as hereinabove quoted and as revealed by appellant's undisputed testimony, the 165 feet constituting the depth of the old well was deducted from the total depth of 554 feet and appellant was paid for the drilling at the rate of $5 per foot as stipulated in the contract. Since appellant was fully paid for the drilling actually performed for R. B. Taylor, as provided by the written contract of the parties, he would have no cause of action against R. B. Taylor for the 389 feet as drilled below the old well. The amount paid for such drilling in the sum of $1,945 was accepted by the appellant as full payment under the contract in writing.

As to appellant's contention that he established a parol contract with appellees, there is no evidence of any parol agreement with R. B. Taylor and no evidence that Joe Taylor was the duly authorized agent of R. B. Taylor as to executing any contract either written or parol. Further, appellant was bound under the written contract provision that the beginning point of drilling was at the bottom of the old well— a point 165 feet below the surface of the land. Appellant was bound to drill from such beginning point of drilling, as required by the party of the first part, to a depth not in excess of 550 feet. It is therefore apparent that if appellant drilled to a depth of 640 feet below the surface of the land he had drilled only 475 feet from the beginning point of drilling—the bottom of the old well. As to such drilling, appellant was bound by the written contract to complete such drilling at the rate of $5 per foot. There

was no consideration for his alleged parol contract to extend the first drilling to such depth under an alleged new parol contract rate of $10 per hour as contended by appellant. In addition to the fact that appellant's testimony revealed no parol contract as made with any of the appellees, his own testimony reveals that although he drilled 389 feet for the sum of $1,945 as paid him, he sought to recover the sum of $2,512.50 for drilling only an additional 80 or 85 feet. The proof is wholly lacking as to an offer and acceptance in regard to a parol contract between any of the parties.

The judgment of the trial court is further supported under the following principles. Under the provisions of the written contract appellant was bound to drill to a depth of 550 feet below the bottom of the old well—this is revealed by appellant's undisputed testimony. The well was not drilled to this depth nor was the well actually drilled 12 inches in diameter or reamed out to that diameter. As revealed by appellant's undisputed testimony on the above two issues, he is precluded from any recovery under the original written contract, although R. B. Taylor actually paid him $1,945 for all drilling as alleged to have been performed under the written contract between the parties. Fessman v. Barnes, Tex.Civ.App., 108 S.W. 170; Ellison Furniture & Carpet Co. v. Langever, 52 Tex.Civ.App. 50, 113 S.W. 178; Cotherman v. Oriental Oil Co., Tex.Civ.App., 272 S.W. 616; American Water Co. v. Bunge, Tex.Civ.App., 213 S.W.2d 93. Further, since appellant's own testimony failed to sustain his contention of the making of a valid parol contract with appellees, he cannot recover on this theory. 10 Tex.Jur., Page 26, Sections 12, 13 and 14.

Appellant must predicate his right of recovery in this case on the specific written contract or the alleged parol contract and he cannot recover on quantum meruit. "The amount of compensation was not left to implications, but was definitely fixed. For the court to determine what the * * * services were worth would be for it to make a contract for the parties. That,

of course, it cannot do." Dallas Electric Supply Co. v. Branum Co., 143 Tex. 366, 185 S.W.2d 427, 429 [2].

Appellant's points one and two are overruled and the judgment of the trial court is affirmed.