OPINION HEADING PER CUR 









                NO. 12-05-00018-CV

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS
DISTRICT

 

TYLER, TEXAS

 

 

PALESTINE
WATER WELL

SERVICES,
INC.,     §          APPEAL FROM THE 369TH

APPELLANT

 

V.        §          JUDICIAL
DISTRICT COURT OF

 

VANCE
SAND AND ROCK, INC.,

APPELLEE   §          ANDERSON
COUNTY, TEXAS

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



OPINION








            In this breach of contract case tried before a jury, the
trial court entered an award in favor of Appellee Vance Sand and Rock, Inc. (“Vance
Sand”) and against Appellant Palestine Water Well Services, Inc. (“PWW”).  PWW contends that no contractual warranty
regarding production was ever made and therefore could not have been breached,
no benefit of the bargain damages were proven, and attorney’s fees were
improperly awarded.  We affirm. 

 

Factual and Procedural Background

            Vance Sand purchased 84 acres of land along the Trinity
River in the community of Tucker, south of Palestine.  It planned to dig sand and gravel deposits
off this land to produce sand and gravel for the concrete industry.  The process of developing saleable products
required a piece of machinery called a sand screw, which separates the gravel
from the sand and then washes and cleans the sand. 








            To operate the sand screw, Vance Sand needed water at the
rate of 200 gallons per minute (“g.p.m.”). 
A well producing a smaller quantity of water was located on the 84
acres.  Vance Sand, through its three
shareholders, Robert McKelvey, Veril Vance, and Steve Presley, contacted PWW’s
owner, Jere Pritchett, about drilling a well. 
McKelvey and Vance spoke to Pritchett and explained to him that they
preferred to have a water well which would produce 300 g.p.m. so that there
would be no problems in operating the sand screw, but that they had to have a
minimum of 200 g.p.m. to efficiently operate the sand screw.  McKelvey and Vance testified that Pritchett,
a water well driller licensed by the State of Texas, told them that based on
his experience in drilling a number of water wells in the area, there would be
no problem in drilling a well that would produce 200 g.p.m. 

            On June 9, 1997, Pritchett faxed a handwritten estimate
to McKelvey in which he quoted the cost of a 20 horsepower pump capable of
pumping 200 g.p.m.  The next day, June
10, PWW faxed to Vance Sand a three page “water well drilling and completion
recommendation” in which it stated that the estimated pump rate would be 200
g.p.m.  The 20 horsepower 200 g.p.m. pump
was included as part of this recommendation. 
At the end of the third page of this recommendation appeared the
statement, “Thank you for the opportunity to provide this recommendation for
your approval.”  PWW began drilling the
well on Vance Sand’s land on the same day, June 10.  After PWW drilled to approximately 450 feet,
Pritchett told Presley that there would not be enough water available to run
the sand screw.  However, Pritchett told
Presley that if he went deeper to 950 feet, there would be 200 g.p.m.  Pritchett explained, “I have drilled into
that aquifer all over this country.  It’s
a big aquifer.  There is a lot of water
down there and we’re going to be able to get that much for you.”  After consulting with McKelvey and Vance,
Presley told Pritchett to go ahead and drill the deeper well.  

            The drilling of the well was completed on June 26.  Vance Sand paid PWW $61,289.18 for the
drilling of the water well.  However,
when Vance Sand began its sand and gravel operation, the well was able to
consistently produce only about 75 g.p.m.  Twice, PWW replaced the pump on the well, but
its output never increased from 75 g.p.m. 
When Vance Sand asked Pritchett to take the necessary actions to get the
well producing to the level of 200 g.p.m., Pritchett said he would not do
anything further and that they would have to sue him.  Because Vance Sand was unable to get enough
water to profitably operate the sand and gravel business, it ceased the
production of sand and gravel from the land in 1998.  In August, 1999 Vance Sand filed suit against
PWW.








            In January 2003, Vance Sand substituted a new attorney in
the case.  That same month, the new
attorney sent a demand letter for payment on Vance Sand’s claim to PWW’s
attorney of record.  The matter went to
trial before a jury in October 2004.

            At the end of the trial, eleven special issues were
presented to the jury.  Vance Sand sought
damages for breach of contract and fraud as well as exemplary damages.  The jury awarded Vance Sand $23,678.08 for
breach of contract, $21,187.47 for fraud, and $16,423.63 in exemplary damages
for a total of $61,289.18.

            The trial court entered a judgment for only $23,678.08
plus interest and attorney’s fees.  The
appellate record is silent as to why the other damages awarded by the jury were
not made a part of the court’s judgment. 
PWW timely filed this appeal and has brought three issues for our
review.  

Sufficiency of the Evidence

Formation of Contract








            In its third issue, PWW contends the
evidence is legally and factually insufficient to support the jury’s finding
that the parties entered into an agreement for construction of a water well
that would produce at least 200 g.p.m. 
Asserting that it made no guarantee as to production rates, PWW argues
there was “no meeting of the minds” between the parties regarding the expected
rate of production from the well.

Applicable
Law

            When attacking the legal sufficiency
of an adverse finding on an issue for which the other party had the burden of
proof, the attacking party must demonstrate there is no evidence to support the
adverse finding.  Croucher v.
Croucher, 660 S.W.2d 55, 58 (Tex. 1983).  In conducting a legal sufficiency review, we
must view the evidence in a light that tends to support the disputed finding
and disregard evidence and inferences to the contrary.  Wal-Mart Stores, Inc. v. Canchola,
121 S.W.3d 735, 739 (Tex. 2003).  If more
than a scintilla of evidence supports the challenged finding, the no evidence
challenge must fail.  Id.  If the evidence furnishes some reasonable
basis for differing conclusions by reasonable minds about a vital fact’s
existence, more than a scintilla of evidence exists.  Clayton v. Wisener, No.
12-03-00251-CV, 2005 WL 1404992, at *6 (Tex. App.–Tyler, June 15, 2005, pet. denied).  

            If a party is attacking the factual
sufficiency of an adverse finding on an issue for which the other party had the
burden of proof, the attacking party must demonstrate that there is
insufficient evidence to support the adverse finding.  See Croucher, 660 S.W.2d at
58.  When considering a factual
sufficiency challenge, we consider all of the evidence, not just that which
supports the verdict.  Maritime
Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex. 1998).  We set aside the verdict only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.  Id. at 407.  This court is not a fact finder and may not
pass on the credibility of the witnesses or substitute its judgment for that of
the trier of fact, even if a different conclusion could be reached on the
evidence.  Id.

            The following elements are required
for the formation of a valid and binding contract: 1) an  offer, 2) acceptance in strict compliance
with the terms of the offer, 3) a meeting of the minds, 4) each party’s consent
to the terms, and 5) execution and delivery of the contract with the intent
that it be mutual and binding.  Critchfield
v. Smith, 151 S.W.3d 225, 233 (Tex. App.–Tyler 2004, pet. denied).  Consideration is also a fundamental element
of a valid contract.    Hubbard v.
Shankle, 138 S.W.3d 474, 481 (Tex. App.–Fort Worth 2004, pet.
denied).  The elements of written and
oral contracts are the same and must be present for a contract to be
binding.  Id.  In determining the existence of an oral
contract, the court looks to the communications between the parties and to the
acts and circumstances surrounding these communications.  Critchfield, 151 S.W.3d at
233.  

            In determining whether there was a “meeting
of the minds,” and therefore an offer and acceptance, courts use an objective
standard, considering what the parties did and said, not their subjective
states of mind.  Komet v. Graves,
40 S.W.3d 596, 601 (Tex. App.–San Antonio 2001, no pet.).  Courts look to the communications between the
parties, as well as the acts and circumstances surrounding the communications,
in making this determination.  Id.

Discussion

            Pritchett knew from his first
meeting with McKelvey and Vance that it was necessary to have a well that would
produce 200 g.p.m. for the sand screw to operate.  He represented that it would be no problem to
drill a well on Vance Sand’s land to produce 200 g.p.m.  In his handwritten offer to Vance Sand on
June 9, Pritchett used a 200 g.p.m. figure. 
In PWW’s June 10 three page typewritten offer to Vance Sand seeking an
acceptance, the 200 g.p.m. figure was used twice.  The drilling of the well commenced that same
day.  

            Herman Linam, PWW’s office manager
who assisted Pritchett in preparing the June 10 offer to Vance Sand, stated
that the 200 g.p.m. pump rate listed in the June 10 offer was based on
histories of wells that had been drilled in Anderson County as stated in a
document produced by the Texas Water Development Board.  He further stated that he expected Vance Sand
to rely on the estimated pump rate of 200 g.p.m., as well as the recommended
use of a 20 horsepower pump capable of pumping at least 200 g.p.m., in making
its decision to accept PWW’s offer to drill the well.  

            The evidence in the record to show
that the 200 g.p.m. rate was not part of the contract between the parties was
Pritchett’s contention that he made no guarantees on the quantity of water,
offering instead to get as much water as there was available.  He told the jury that the 200 g.p.m. was only
a target and that he told McKelvey, Vance, and Presley that “we are only going
to try to get you 200 g.p.m.”  Linam also
testified that he believed PWW’s written offer only meant “we are going to try
to get 200 g.p.m.”  

            In viewing the acts and
circumstances surrounding the communications, the evidence is weighted heavily
in favor of the determination that all of the elements of a valid contract were
established, including a “meeting of the minds.”  We hold the evidence was both legally and
factually sufficient for the jury to find that there was a contract between the
parties for a water well to be drilled capable of producing at least 200 g.p.m.
PWW’s third issue is overruled.  

Damages

            In its first issue, PWW asserts that
the evidence is legally and factually insufficient to support the jury’s
finding that Vance Sand sustained $23,678.08 in damages.  PWW argues that the record is silent as to
the value of the water well it agreed to construct.  PWW contends that “benefit of the bargain” is
the applicable damage model in this case. 
The “benefit of the bargain” measure of damages is the difference
between the value parted with and the value actually received.  W.O. Bankston Nissan, Inc. v. Walters,
754 S.W.2d 127, 128 (Tex. 1988).  PWW
contends that Vance Sand never provided evidence of the value actually
received, that is, the value of the well producing 75 g.p.m., and therefore it
failed to meet its burden of proof on damages. 
We disagree. 

            It has generally been recognized
that a water well driller’s failure to fulfill his expressed agreements
contained in a contract will preclude him from recovering the stipulated
compensation or, in case all or any part of the compensation has been paid,
render him liable to the owner for such amount. 
Frye v. Appleby Water Supply Corp., 608 S.W.2d 798, 801
(Tex. Civ. App. - Tyler 1980, writ ref’d n.r.e.) (citing Old Colony Ins.
Co. v. Quitman, 163 Tex. 144, 352 S.W.2d 452 (1961)).  When a well does not produce the quantity of
water that the water well driller has represented it will produce, the driller
has no right to retain any consideration paid for the well.  See American Water Co. v. Bunge,
213 S.W.2d 93, 98 (Tex. Civ. App.–Galveston 1948, writ. ref’d n.r.e.).  In  Bunge, a water well driller
represented to a rice farmer that he would drill a well producing 2500
g.p.m.  Id. at 94.  The well only produced 500 g.p.m.  A contract to drill a well that will produce
2500 g.p.m. is not performed by drilling a well that produces 500 g.p.m.  Id. at 96.  Similarly, in the instant case, the drilling
of a well that produces 75 g.p.m. does not fulfill a promise to drill a well
that will produce 200 g.p.m.  

            Water wells that do not produce
water as contractually agreed upon have no value to the landowner.  See Frye, 608 S.W.2d at 801; Bunge,
213 S.W.2d at 98.  We hold that as a
matter of law, the well had no value to Vance Sand.  Therefore, Vance Sand received no value for
the $61,289.18 that it parted with.  The
$23,678.08 awarded by the jury on Vance Sand’s contract cause of action was
within the range of up to $61,289.18 that it could have determined PWW was
liable for under this contract.  It is
well established that in resolving damage issues, a jury’s finding will be
upheld if it is within the range of the testimony regarding the amount of
damages incurred.  State Farm Fire
and Cas. Co. v. Rodriguez, 88 S.W.3d 313, 321 (Tex. App.–San Antonio
2002, pet. denied).  PWW’s issue one is
overruled. 

Attorney’s Fees

            In its second issue, PWW contends
that the trial court erred in allowing Vance Sand to recover attorney’s fees on
its breach of contract claim because Vance Sand did not timely provide notice
of its claim prior to filing suit.  As
stated above, Vance Sand filed suit in August 1999, but its substituted
attorney of record did not present a claim for payment to PWW’s attorney until
January 2003.  

            A party may recover reasonable
attorney’s fees if a claim is for an oral or written contract.  Tex.
Civ. Prac. & Rem. Code Ann. § 38.001(a) (Vernon Supp. 2005).  To recover attorney’s fees, the claimant must
be represented by an attorney, the claimant must have presented the claim to
the opposing party, and the opposing party must not have tendered payment for
the just amount owed before the expiration of the thirtieth day after the claim
was presented.  Id. §
38.002.  There is no requirement in the
statute that the demand for payment be made prior to the time suit is
filed.  See Gateley v. Humphrey,
151 Tex. 588, 591, 254 S.W.2d 98, 100 (1952) (interpreting the predecessor
statute); see also Stuckey v. White, 647 S.W.2d 35, 38 (Tex. App.–Houston
[1st Dist.] 1982, no writ) (There is no requirement that a presentment for
claim must be made prior to the time suit is filed to recover attorney’s fees,
only that the claim is not paid within 30 days once demand is made.).       PWW
also contends that the demand in January 2003 was excessive and therefore Vance
Sand is not entitled to recover its attorney’s fees.  However, PWW did not make this objection in
the trial court.  Therefore, the argument
is waived.  See Tex. R. App. P. 33.1(a)(1).  PWW’s issue two is overruled.

Disposition

            Having overruled PWW’s three issues,
the judgment of the trial court is affirmed.

 

                                                                                                     JAMES T. WORTHEN    

                                                                                                                 Chief Justice

Opinion delivered February 22, 2006.

Panel
consisted of Worthen, C.J., Griffith, J. and DeVasto, J.

 

 

 

(PUBLISH)