John W. RYAN, Appellant,

v.

Mabel G. THURMOND, Individually and as Independent Executrix of the Estate of Jimmie Thurmond, Deceased, Appellee.

No. 632.

Court of Civil Appeals of Texas, Corpus Christi.

April 27, 1972.

Rehearings Denied June 8, 1972.

Fischer, Wood, Burney & Nesbitt, Frank W. Nesbitt, James P. Ryan, Corpus Christi, for appellant.

Branscomb, Gary, Thomasson & Hall, Gary Norton, Corpus Christi, for appellee.

## OPINION

NYE, Chief Justice.

This is a suit to recover the balance due on a written building contract for work done in connection with the construction of a building in Kingsville, Texas. The owner of the building, John W. Ryan, filed a cross-action to recover damages for delay on the part of the contractor in completing the building. The case was tried to a jury and, based on answers to special issues, judgment was rendered for the contractor. All relief was denied to the owner on his cross-action. The owner has perfected his appeal from the judgment of the trial court.

On August 23, 1967, Jimmie Thurmond,[1] d/b/a Jimmie Thurmond Construction Company, entered into a written agreement with

1. Jimmie Thurmond died September 12, 1968. His wife Mable G. Thurmond, brought this suit as an individual and as independent executrix of the estate of her deceased husband. She is referred to hereinafter as the contractor.

John W. Ryan to construct a building for Ryan for the sum of $294,000.00. The contract provided that the work shall commence immediately and shall be substantially completed by January 10, 1968. The completed building was to be turned over to the owner not later than February 10, 1968. Part of the work was done by the contractor pursuant to this agreement and part of the work was performed pursuant to several oral agreements entered into as additions to the work specified in the written agreement. The building was not substantially completed until May 28, 1968, at which time the tenant moved in and occupied the building. As the construction of the building progressed, the owner paid the contractor $274,600.00. Later certain disputes arose between the contractor and the owner.

The contractor brought this suit to recover the balance due on the contract (plus additions, and less certain deletions agreed to by the parties). The owner's cross-action against the contractor was predicated on the delay by the contractor in completion of the contract. Ryan (called the owner hereafter) sought damages for loss of the rental value to the building and for the interest he paid on money borrowed to complete and finance the building.

The owner complains of the judgment of the trial court in 479 points of error, summarized at the suggestion of this Court in his fifth brief to 33 contentions. We have reviewed the entire voluminous record and considered all the points of error, the appellant's contentions, as well as the contractor's two cross-points. For the purpose of disposition of this appeal, we consider in detail three basic points of error, two of which require a reversal of this case. While isolation of three of the asserted errors might seem to be a cursory treatment of the points on appeal, they nevertheless form the only crux for reversal of the instant appeal.

■ First the owner contends in a series of points of error, that the contractor's suit was tried on the wrong theory and therefore the judgment is erroneous. The contractor sought payment for the balance due on the contract. His suit was based on the fact that he had fully completed the construction contract and the balance of the money under the contract was due and owing. The pleadings and proof were predicated on this theory. The contract, on the other hand, stated that (Art. 5):

"Final payment shall be due Thirty days after (1) Substantial Completion of the work provided *the work be then* (2) *fully completed and the contract* (3) *fully performed*." (Emphasis supplied)

This provision of the contract (in three parts) requires, first of all, that: The work must be substantially completed. Then after thirty days, final payment will be due. Provided, and only if, the two following conditions take place: (1) That the work be fully completed, and (2) the contract fully performed. The owner contends that the latter provision has never taken place; therefore, the contractor is not entitled to the balance due under the contract. We agree.

Mrs. Thurmond filed this suit to recover everything left due and owing under the contract, i. e.: $24,224.17. She plead full performance of the contract and complete construction of the building. In the alternative, she plead a full recovery based on quantum meruit. It was undisputed that the building was substantially completed on May 28, 1968, the date the tenant started its occupancy. However, the evidence is virtually undisputed that the contractor never did fully perform all of the terms and conditions of the contract.

■ We recognize the rule that a strict and literal performance of a building and construction contract is not absolutely essential to entitle a contractor to recover on his contract. If the contractor has substantially performed, he may recover the contract price less the reasonable costs of remedying trivial defects and omissions so

as to make the structure comply with the contract terms. Atkinson v. Jackson Bros., 270 S.W. 848 (Tex.Com.App.1925, holding approved); Graham Construction Co. v. Walker Process Equipment, Inc., 422 S.W.2d 478 (Tex.Civ.App.—Corpus Christi 1967, ref'd n. r. e.); Graves v. Albert & Fuess, 104 Tex. 614, 142 S.W. 869 (1912); Christy v. Williams, 292 S.W.2d 348 (Tex.Civ.App.—Galveston 1956) and 156 Tex. 555, 298 S.W.2d 565 (1957); South Texas Building Co. v. Ideal Engineering, Inc., 402 S.W.2d 292 (Tex.Civ.App.—Houston 1966, ref'd n. r. e.).

Here, however, the contractor did not plead or prove the requisites of substantial performance. The contractor's entire suit was predicated on the fact that he had fully completed the contract and was therefore entitled to full recovery of all monies due under the contract. There were no issues submitted as to the costs to complete the contract according to its complete terms, nor were there issues submitted as to the damages caused the owner by the contractor's failure to complete the contract.

■ The contract, in Art. 1, entitled "Scope of the Work", provided that the contractor ". . . shall do everything required by this Agreement, the General Conditions of the Contract, the Specifications and the Drawings." The evidence clearly reflects undisputed instances where the contractor did not comply with all of the terms of the contract. At the time the suit was filed on December 9, 1968, the following items were alleged definitely to be instances where the contractor had not complied with the contract terms:

(1) The emergency lighting system had not been installed;

(2) The contractor still owed bills on the job amounting to $9,952.47;

(3) A certain lien was still unpaid and a mechanic's lien was filed and unreleased;

(4) Thurmond's own mechanic's lien was still on file and had never been released;

(5) Certain warranties and guarantees required by the contract had not been furnished;

(6) The contractor had not submitted satisfactory evidence that all bills for all of the labor and material had been paid.

After the suit was filed, a number of the contract deficiencies were satisfied by the contractor. For instance, the emergency lighting system was later installed, one of the mechanic lien claims was paid, and the contractor's warranties were finally made and satisfied just before trial. Still the evidence is that certain guarantees and other warranties required of the contractor to be furnished, had not been furnished at the time of trial in accordance with the terms of the contract. These include:

(1) A 10-year warranty covering vitreous porcelain enamel facing as required by the specifications;

(2) The guarantee covering the colored protective coating on the concrete exteriors;

(3) Guarantee covering the automatic door operators and controls;

(4) Manufacturer's warranties covering the water heaters.

Other provisions of the contract that were not "fully performed" were:

(5) The contractor had not delivered to the owner, a release of the contractor's mechanic's lien;

(6) The contractor had not demonstrated that all of the indebtednesses owed as a result of the contract had been satisfied.

In connection with number (6) above, the contract states:

"Before issuance of final payment the Contractor shall submit evidence satis-

factory to the Arcthitect that all payrolls, material bills, and other indebtedness connected with the work have been paid or otherwise satisfied."

The architect testified that this had not been done. The jury found that the contractor had furnished all warranties and guarantees provided by the terms of the contract. We hold that there was no evidence to support such a finding, or in the alternative the greater weight and preponderance of the evidence shows the opposite of this to be true.

■ The contract stated that final payment would not be due until thirty days after substantial completion of the work and only then upon the proviso that the work be fully completed *and* the contract *fully performed*. It is elementary that in contract law that a contract is not performed until it is completed. Performance by a contractor is the fulfillment of the obligations and duties of the contract so as to put to an end its obligations by leaving nothing further to be done. The general rule is that a party suing upon a contract, must recover upon the identical contract alleged, or not at all. As far as his right of recovery is concerned, if based on the contract, he must show by evidence that he has discharged the obligations in full which rested upon him or otherwise he cannot recover. Crane v. Colonial Holding Corp., 57 S.W.2d 316 (Tex.Civ.App.—Amarillo 1933, n. w. h.). The contractor was required to do the work according to the plans and specifications that made up an essential part of the contract. The contractor was not entitled to recover the full amount of the contract until he had shown that he had fully completed the provisions agreed upon. 17A C.J.S. Contracts § 494(1) and § 451; City of Fort Worth v. Rosedale Park Apts., 276 S.W. 2d 395 (Tex.Civ.App.—Fort Worth 1955, ref'd); Benson v. Harrell, 324 S.W.2d 620 (Tex.Civ.App.—Fort Worth 1959, n. r. e.).

■ The contractor's suit in the alternative was one for quantum meruit.

The right to recover on quantum meruit is maintainable where there has been a partial performance of the contract. This right does not grow out of the contract, but is independent of it. This basis of recovery is founded on the theory that where an owner was benefitted by such part performance, it would be inequitable for the owner to refuse to pay for what he has received. Davidson v. Clearman, 391 S.W. 2d 48, 50 (Tex.Sup.1965); 10 Tex.Jur.2d Building Contracts, §§ 44 and 45, pp. 46–49. The right to recover on a quantum meruit is not based on the contract, but upon an implied agreement by the owner to pay for the benefits received. Where the parties have a written contract and the contractor has not completed the work or does not comply with the terms of the contract, recovery on quantum meruit is not applicable. Simons v. Paine, 140 S.W. 855 (Tex.Civ.App.—San Antonio 1911, err. ref'd).

■ In the case before us the contract specifically gave the owner the right to retain the balance due the contractor to indemnify him against claims and liens. The owner was not required to pay this balance until the contractor had fully completed the terms of the contract and satisfied the provisions that all bills had been paid and the liens and claims were satisfied. See 17A C.J.S. Contracts § 368 at p. 388.

The jury found that the contractor had substantially completed the construction of the building (at the time the tenant took possession); that it would only cost the owner $350.00 to fully complete the construction of the building as of the date the building was substantially completed; and that the contractor had now (at the time of trial) performed all the work necessary to the full completion of the building in accordance with the plans and specifications and requirements and changes of the plans and specifications for the construction of the building.

■ The contractor by pleadings and proof did not seek recovery on the theory

of law called "substantial performance". Therefore, the special issue findings relative to this doctrine are inapplicable. Even if there had been a trial impliedly had upon this theory of substantial performance, the contractor failed in the requirement to furnish evidence of damages to the owner that would properly measure the deductions that are allowable to remedy the omissions caused by the contractor's failure to strictly perform the contract.

The jury properly found that the parties by their conduct had waived some requirements of the written contract. For instance, the contract provided that no changes in the work should be made unless a certain written order from the owner was signed and countersigned by the architect authorizing the change. However, numerous oral changes were made in the course of the construction by the owner and its architect. None of the changes were made in writing. The jury found that the reasonable costs for this extra work that was performed by the contractor in addition to the work specified in the original contract, amounted to $6619.17.

In another instance, the contract provided that if the contractor was delayed in the progress of the work by *"any cause beyond his control"*, he should make a claim in writing to the architect for an extension of time. The contract stated "No such extension shall be made for delay occurring more than seven days before claim therefor is made in writing to the Architect." After the contract had been executed, the initial construction was delayed because of Hurricane Beulah. There was evidence that there were 18 inches of water on the building site for approximately 30 days. The contractor never made any claim in writing to the architect for an extension of time. The jury found that the contractor was prevented by weather conditions from working on the construction of the building for 45 days between August 23, 1967 and February 10, 1968 (the date the contractor was to turn over the building to the owner), and for 11 additional days between February 10, 1968 and May 28, 1968 (the date the building was substantially completed) for a total of 56 days. The jury further found that the owner's conduct led the contractor to believe that the owner consented to extending the time for substantial completion of the building until May 28, 1968, without requiring a written request for an extension of time to complete the construction of the building as a result of the delay caused by the weather. The jury was silent, however, about the other 51 days between February 10 and May 28.

In still another instance where the parties disregarded the contract, was a provision that required written notice by the contractor that the work was ready for final inspection and acceptance. This was never given by the contractor. Seven certificates of payments were made to the contractor and the eighth and final certificate representing all the monies due under the contract was drawn and ready to be presented to the contractor, but was withheld by the owner just prior to its issuance and delivery. The contract specified that the architect was to promptly make inspection of the work and if he found the work acceptable under the contract and the *contract fully performed* he should promptly issue a final certificate that the work had been completed and the entire balance due and payable. This was never done. The contract provided that if the architect fails to issue a certificate of payment to the contractor he should state in writing his reasons for withholding the certificate. This also was never done. The owner permitted the tenant to move into the store on May 28, 1968. The owner did not require the contractor to issue a written notice that the building was ready for final inspection and acceptance, nor did the contractor request the architect to issue a certificate of completion.

The contractor argues that the owner did not require the architect to state in writing the reasons for withholding the final payment; and that the owner did not require the contractor to provide a certificate of

completion before or after the tenant moved into the building. This the contractor says implies that the work specified in the written contract for the construction of the building was accepted, and that any unperformed conditions of the contract (enumerated above) were waived.

Even if the evidence would support the fact that the owner waived the requirement that his architect issue a formal final certificate that the work for the construction of the building had been completed as a condition to paying for the work completed by the contractor, this cannot be expanded into a waiver of the owner's right to have the contract fully performed.

The owner is not contending that he has a right to withhold payment to the contractor because of the lack of this final certificate. Rather, the owner asserts that full payment is not due because the contract has not been fully performed.

The owner's conduct in support of the waiver issues concerning formal contract requirements cannot be interpreted as a waiver by the owner of his right to have the contract fully performed and completed. The great weight and preponderance of all of the evidence was that the owner was insisting on full compliance throughout. He did not waive full completion of the contract as a condition to final payment.

The second serious point of error is represented by appellant's contentions that he is entitled to judgment on his cross-action against the contractor for damages caused by the delay in completing the work. The jury found that the reasonable rental value of the building between February 10, 1968 (the date the contractor agreed to complete the building) and May 28, 1968 (the date the building had been substantially completed and turned over to the owner's tenant) was $158.67 per day. There were 107 days involved. Appellant contends that he is entitled to damages in the amount of $158.67 for the 107 days for a total of $16,977.69. In the alternative, the owner contends that he is entitled as a matter of law, to damages for 51 days at $158.67, where no excuse for delay had been offered by the contractor or found by the jury.

A building contractor who has not performed his contract in due time is generally liable in damages for the delay to the extent that damages are attributable to him, unless there has been a waiver of the claim for damages. As a rule, the measure of damages for failure to complete the work within the time fixed by the contract is the value of the use of the building. This "use" of the building is ordinarily its rental value for the period of delay. J. T. Stark Grain Co. v. Harry Bros. Co., 57 Tex.Civ.App. 529, 122 S.W. 947 (1909, wr. ref'd) and 10 Tex.Jur.2d, Building Contracts, § 58, p. 66 (1959).

The owner may waive or extend the time within which a building contract is to be performed by the contractor. The waiver or extension may be implied as well as express. What acts or omissions will constitute a waiver, depends on the nature and the circumstances of each case. If, after the time for completion of the work has expired, and the owner assents to the continuance of the work without objection to the delay, he will be deemed to have waived the provision as to time of performance. 17A C.J.S. Contracts § 506 (2), pp. 807–809 (1963). The effect of an extension or waiver of time for performance is merely to substitute a new time for the old. It does not affect the other provisions of the contract. Where extension of time is waived by the owner and the agreement (express or implied) is silent as to the duration of the extension, the law implies that it shall be for a reasonable time.

A waiver of the provision as to the time of performance does not necessarily waive the owner's claim for damages by reason of the failure to perform in time. The mere fact that the owner permits the contractor to continue the work after the

time for its completion has expired, might constitute a waiver of the breach for which the owner could have insisted on a forfeiture of the contract, nevertheless the owner may still recover any damages sustained as consequence of the breach. 17A C.J.S. Contracts § 493, p. 700; Western Irr. Co. v. Reeves County Land Co., 233 S.W.2d 599 (Tex.Civ.App.—El Paso 1950, n. w. h.), see authorities cited therein; Hipp v. City of Houston, 30 Tex.Civ.App. 573, 71 S.W. 39 (1902, err. ref'd), and Taub v. Woodruff, 63 Tex.Civ.App. 437, 134 S.W. 750 (1911, n. w. h.). In order for the owner to recover such damages, however, he must have performed the contract in all essential respects on his part. Sinclair Refining Co. v. Costin, 116 S.W.2d 894 (Tex.Civ.App.— Eastland 1938). If the contractor's conduct in not completing the work was reasonable under the circumstances, the owner cannot recover damages for the delay. 17A C.J.S. Contracts § 506(2), p. 810 (1963).

The owner signed the original lease with Kroger (the tenant) on April 18, 1967, for a term of 15 years beginning on October 1, 1967 and ending September 30, 1982, at a rental of $4,826.25 per month. The building contract did not contemplate completion of the building in time to coincide with the beginning of the original lease with the tenant. The contract did not say that time for completion was of the essence. The lease was later amended to change the inception date to May 28, 1968 (the date the building was substantially completed) and the expiration date to May 31, 1983 in order to provide for a full 15 year term. The owner does not make any contention that the tenant was looking to him for any damages because of the delay. The owner's only contention is that because of the delay in completing the building, he has been damaged.

The trial court entered judgment for the contractor in the amount of $24,224.17 which represented the balance due on the contract in the amount of $17,605.00, plus $6,619.17 found by the jury to represent the additional work performed by the contractor. The trial court refused to award Ryan any amount on his cross-action for damages caused by the delay.

The trial court's refusal to award damages to Ryan might be justified on two possible grounds: (1) That the contractor's conduct in substantially completing the building was reasonable under the circumstances because of the delay caused by the weather or (2) because the contractor was required to undertake additional extra work and therefore extra time was required to complete the contract. However, there was no jury issue finding such fact or any finding excusing the extra 51 days of delay. Nor was there any jury finding that the total delay was reasonable under the circumstances.

█ The contractor argues that the amendment of the lease by the owner to provide for a full 15 year term prohibits any finding of damages because of delay since the owner still gets the benefit of the full 15 year term of his lease from Kroger, the tenant. It is an indisputable fact that the earlier the inception date on the lease the earlier the termination. If the building had been completed on February 10, 1968 as the parties agreed, it would naturally follow that the end of the lease would be proportionately sooner. The building would then be available for additional rental. This argument by the contractor has no merit.

There is some evidence that the owner, because of his conduct, did waive the written requirement for an extension of time in which to complete the building as a result of delays caused by the weather. However, the greater weight and preponderance of the evidence is such that not all of the delay was caused by the weather. Therefore, the total excuse for the total delay is not justified. We believe that this case must be remanded for a new trial on the contractor's suit against the owner for the balance due under the contract and that the owner's cross-action for delay should, in the interest of justice, be also included in the retrial.

A third general point of error centers around the owner's contentions that he is entitled to damages based upon the interest paid on money borrowed by him to build the building. This is not a proper element of damage where damages are sought for the reasonable market rental value of the building in question. The rental income the owner receives for his building, is the interest he receives from his investment. If he has to borrow money to build the building, the interest he pays is a part of his expense in furnishing the building. It is the loss of the rental income from the building that makes up the element of his damage, if any. The owner is not entitled to the interest on his money he borrowed to build the building and the loss of rental income, in addition. There was no proof of any special damages. Therefore, interest expense is not applicable in this case.

Turning now to the contractor's cross-points: These relate to interest on sums due him, and attorney fees. We hold that the contractor would not be entitled to interest on any sums due until he has fully completed the contract. This has not been done at this time. If the contractor bases his lawsuit on substantial performance on a retrial, then in that event, interest would run on any recovery he makes from the date of judgment.

We do not find it necessary to consider the contractor's cross-assignment of error regarding the failure of the trial court to award attorney fees because the contractor is not entitled to recover any money at this time. Art. 2226, Vernon's Ann.Civ.St., contemplates recovery of attorney fees only if the claimant finally obtains judgment in which attorney fees are applicable. Unless the contractor can on a retrial, bring himself within the purview of the strict construction of Art. 2226, attorney fees are not recoverable by the contractor in any event. See Tenneco Oil Company v. Padre Drilling Company, 453 S.W.2d 814 (Tex.Sup.1970). Contractor's cross-points are overruled.

We have considered all of appellant-owner's points of error and the contractor's cross-points of error. All points of error not discussed and those that are inconsistent with this opinion are overruled. The judgment of the trial court is reversed and the cause is remanded for a new trial.