Ray F. SMART et ux., Appellants,

v.

UNITED STATES FIDELITY & GUARANTY CO., and William D. Petty, Appellees.

No. 5347.

Court of Civil Appeals of Texas, Waco.

July 18, 1974.

Rehearings Denied Aug. 22, 1974.

McGown, McClanahan & Hamner, San Antonio, for appellants.

C. G. House, House, Mercer, House, Brock & Wilson, San Antonio, for appellees.

## OPINION

McDONALD, Chief Justice.

This case grows out of a contract by defendant Petty to construct a veterinary hospital for plaintiff Dr. Smart.

Plaintiff Dr. Smart sued defendants Petty and USF & G alleging Petty contracted to construct plaintiff a veterinary hospital on plaintiffs' land for $28,667; that USF & G executed performance and labor and material payment bonds for the job; that Petty breached the contract by pouring a defective foundation (and in the wrong location); that plaintiff paid Petty $5,600; that plaintiff called on Petty to correct deficiencies and called on USF & G to perform; that Petty abandoned the job, and USF & G refused to perform its obligations under the bonds; that Petty and USF & G wilfully joined with Matyear a subcontractor of Petty in wrongfully recording a $4,000 lien against plaintiffs' land; that a mechanics lien contract against plaintiffs' land which had been executed by plaintiff solely to facilitate borrowing money from the Boerne Bank was

recorded; that plaintiff lost profits from his profession as a result of the breach of contract; that plaintiff lost a sale of the land as a result of the liens; that removal of the defective slab would cost $2,000.

Plaintiffs prayed for judgment freeing the land from any lien claim under the unrecorded building contract; cancellation of the recorded 24 February, 1970 mechanics lien; $5,600 plus interest from date of payment; $2,000 to remove the slab; damage for loss of sale; damages for lost profits; and exemplary damages.

Trial was to a jury which found:

1) Plaintiff delivered the mechanics lien dated 24 February, 1970 to the abstract company on condition it be assigned to the Boerne Bank.

3) Plaintiff allowed Petty reasonable opportunity to, construct the foundation in a good and workmanlike manner.

4) Petty failed to construct the foundation in a good and workmanlike manner.

6) Petty failed to substantially perform construction of the veterinary hospital in a good and workmanlike manner.

7) Prior to Smart's payment of $5,600 to Petty, Petty represented to Smart the foundation had been completed in good and workmanlike manner.

8) 9) 10) Such representation was false; relied on by Smart when making the $5,600 payment; and was material inducement to Smart to make such payment.

10A) Actions taken by House with respect to the Matyear lien prior to time this suit was filed were taken by House as agent of USF & G and Petty, and as attorney for Matyear.

10B) Actions taken by House with respect to the mechanics lien claim by Petty after this suit was filed were taken by House as agent of USF & G and as attorney for Petty.

11) Prior to filing of the Matyear lien Matyear agreed with Petty or USF & G or both that the lien would be recorded against plaintiffs' land for $4,000 owed by Petty to Matyear for the steel building.

12) Petty entered such agreement.

13) USF & G entered such agreement.

14) The Matyear lien was ·recorded by Matyear pursuant to such agreement.

14A) Matyear in recording such lien was actuated by malice.

14B) Matyear did not record such lien in good faith to protect his rights he upon probable cause believed he had in Smart's land.

15) Petty in entering such agreement was actuated by malice against Smart.

15A) Petty did not enter such agreement in a good faith effort to protect rights he upon probable cause believed he had against Smart.

16) USF & G in entering such agreement was actuated by malice against Smart.

16A) USF & G did not enter such agreement in a good faith effort to protect rights it upon probable cause believed it had against Smart.

17) Petty instigated the Matyear lien claim against Smart.

18) Petty instigated the Matyear lien claim for Petty's own interest or to harass Smart.

19) USF & G instigated the Matyear lien claim against Smart.

20) USF & G instigated the Matyear lien claim for USF & G's own profit or with intent to harass Smart.

20A) Prior to filing Petty's amended cross action alleging indebtedness due him from plaintiff and a lien on plaintiffs' land under the 24 Febru-

ary, 1970 mechanics lien Petty and USF & G agreed such claim and lien would be made and Petty would refuse to release same.

20B) USF & G in entering such agreement was actuated by malice against Smart.

20C) USF & G did not enter such agreement in a good faith effort to protect rights it on probable cause believed it had against Smart.

20D) Petty's filing such amended cross action and refusal to release the claim and lien was pursuant to such agreement.

21) Petty's failure to release the mechanics lien was actuated by malice.

22) Petty's failure to release the mechanics lien was not based on a good faith effort to protect rights he upon probable cause believed he had in Smart's land.

23) USF & G instigated Petty's claim against Smart's land under the mechanics lien.

24) USF & G instigated such claim for its own profit or with intent to harass Smart.

25) The recording of the Matyear lien was a proximate cause of Smarts being prevented from continuing construction of the veterinary hospital.

26) Petty's refusal to release the mechanics lien was a proximate cause of Smarts being prevented from continuing construction of the veterinary hospital.

27) In December 1972, Albert Clay offered to purchase Smart's tract free of liens for $10,500.

28) Clay was ready, willing, and able to pay such $10,500 to Smart for the land.

30A) The Petty mechanic lien was a proximate cause of Smarts being prevented from accepting Clay's offer to purchase for $10,500.

30) The Matyear lien was a proximate cause of Smarts being prevented from accepting Clay's offer to purchase for $10,500.

31) The market value of the tract at present is $6,000.

32) Smart suffered a loss of profits proximately caused by noncompletion of the veterinary hospital.

33) Such loss of profits is $10,000.

34) Cost of removing the foundation is $2250.

39) Plaintiff is entitled to recover $20,000 exemplary damages from Petty.

40) Plaintiff is entitled to recover $50,000 exemplary damages from USF & G.

43) The concrete slab was not in substantial compliance with the contract.

44) More rain fell the day the slab was poured than was contemplated by the parties.

45) Such was not a proximate cause of Petty's failure to complete the slab as provided by the contract.

46) 47) 48) 49) 50) 51) 55) 56) Smart did not select the location Petty poured the slab; and did not ratify, approve, acquiesce or waive right to complain of such location.

59) The slab poured by Petty could not be used for that portion of the work under the contract.

The trial court entered judgment for plaintiff.

1) Cancelling the recorded 24 February, 1970 mechanics lien on Smart's land.

2) Awarding Smart $5,600 with interest from judgment against Petty and USF & G.

3) Awarding Smart $4,500 (damage for loss of sale) with interest from judgment against Petty and USF & G.

4) Awarding Smart $10,000 (loss of profits) with interest from judgment against Petty and USF & G.

Plaintiff Smart appeals on 5 points contending the trial court erred:

1) In denying judgment for $20,000 exemplary damages against Petty and USF & G jointly and severally, and for additional $30,000 exemplary damages against USF & G.

2) In denying Smart recovery of $2,000 cost of removal of the foundation slab.

3) In denying recovery of 6% interest on the $5,600 from date of payment of such sum by Smart to Petty.

4) In denying declaratory judgment declaring Smart's land free of any lien claim under the unrecorded January 30, 1970 building contract between Smart and Petty.

Petty and USF & G appeal on 92 points principally contending:

1) There is no evidence or insufficient evidence to sustain Issues 1, 3, 4, 6, 7, 8, 9, and 10.

2) There is no evidence or insufficient evidence to sustain Issues 10A, 10B, 11, 12, 13, 14, 14A, 14B, 15, 15A, 16, 16A, 17, 18, 19, 20, 20A, 20B, 20C, 20D, 21, 22, 23, 24, 25, 26, 30, 30A, 32, and 33.

3) The court erred in not entering judgment for defendants because the undisputed evidence establishes that plaintiffs breached the contract.

4) The court erred in not entering judgment for defendants as the undisputed evidence shows defendants committed no fraud or misrepresentations.

5) The court erred in not entering judgment for defendants as the undisputed evidence establishes Petty was entitled to a mechanics lien and there could be no damages arising from a legal right.

6) USF & G's liability was under the Payment and Performance Bonds, and there was no showing they were violated, hence no liability on USF & G.

7) The court erred in declaring void the mechanics lien as there was no evidence to support such action.

8) The court erred in rendering judgment for the $5,600 against USF & G as such money was paid to Petty and not USF & G.

9) The court erred in rendering judgment for the $4,500 against USF & G because as a matter of law USF & G was only liable on its Payment & Performance Bonds and this matter was not covered under the bonds.

10) The court erred in rendering judgment for the $10,000 against USF & G because USF & G was only liable under the Payment and Performance Bonds and this matter was not covered under the bonds.

The record reflects Petty contracted to construct a veterinary hospital for Smart on Smart's land for $28,667; that USF & G executed Performance and Payment Bonds for the job; that Petty breached the contract by pouring a defective foundation and in the wrong location; that Smart called on Petty and USF & G to correct deficiencies and perform, but that they did not; that Matyear a subcontractor to Petty furnished ($4,000) steel for which Matyear was not paid; that Petty and USF & G instigated and agreed with Matyear that Matyear should file lien for such against Smart's land; that USF & G and Petty were actuated by malice against Smart and acted to distress and harass Smart; that Petty and Smart executed a mechanics lien

contract for the purpose of Smart securing a loan from the Boerne Bank to partially pay for the job; that Smart delivered the mechanics lien to the abstract company for assignment to the Boerne Bank; that Petty and USF & G agreed Petty would claim under such lien and Petty would refuse to release same; that USF & G and Petty were actuated by malice against Smart and acted to distress and harass Smart; that the Matyear lien and the mechanics lien caused Smart to lose a sale to his damage of $4,500; that the cost of removing the defective and improperly placed foundation is $2,000.

The questions presented for determination are: did the trial court err:

1) In awarding Smart the $5,600 Smart paid Petty.

2) In denying recovery of interest on the $5,600 from date of payment by Smart to Petty.

3) In awarding Smart $10,000 loss of profits caused by noncompletion of the veterinary hospital.

4) In awarding Smart $4,500 damages for loss of sale caused by the liens.

5) In denying recovery of $2,000 cost of removal of the defective and mislocated foundation.

6) In denying recovery of exemplary damages.

7) In denying declaratory judgment that Smart's land be free of lien under the unrecorded January 30, 1970 building contract between Smart and Petty.

■ There is ample evidence that Petty breached the building contract of January 30, 1970; that the foundation was defective and in the wrong location; that Petty refused to correct the deficiencies and abandoned the job; that USF & G breached its contract under its Performance Bond; and that Smart paid Petty $5,600 on March 13, 1970 in reliance on Petty's false representation the foundation

had been completed in good and workmanlike manner. Judgment for the $5,600 was correct.

The damage to Smart accrued at the time he paid the $5,600 to Petty. Smart is entitled to 6% interest on such amount from date of payment. Outlaw v. Settegast, Tex.Civ.App., NRE, 338 S.W.2d 291; Texas Company v. State of Texas, 154 Tex. 494, 281 S.W.2d 83; Watkins v. Junker, 90 Tex. 584, 40 S.W. 11.

■ The $10,000 damage was awarded Smart for loss of profits in his veterinary practice caused by Petty and USF & G's breach of their contracts in not completing the veterinary hospital. The trial court did not err in awarding this amount.

■ The $4,500 damage was awarded for loss of a sale caused by the liens. Matyear had a right to file such lien. Lennox Industries, Inc. v. Phi Kappa Sigma Educational & Building Assn., Tex.Civ.App., NRE, 430 S.W.2d 404; Article 5452 Vernon's Ann.Tex.Civ.St. Likewise Petty had a right to refuse to release the mechanics lien as he was contending he had not breached his contract and this matter was not settled until determination by the jury. Thus the trial court erred in awarding the $4,500.

■ The trial court erred in denying recovery of the $2,000 cost of removal of the defective foundation. This damage resulted from breach of their contracts by Petty and USF & G; and should have been allowed.

■ Exemplary damages found by the jury were based on defendants' malice and intent to harass and distress Smart in instigating the recording of the Matyear lien, and USF & G instigating and Petty's claiming under the mechanics lien and in refusing to release same. Since Matyear had a legal right to record his lien and Petty had a legal right to claim under and refuse the release the mechanics lien the trial court did not err in refusing exemplary damages.

Smart prayed for declaratory judgment that his land be free of any lien under the unrecorded building contract between Smart and Petty. Smart was entitled under the record to this relief.

The points of the appellants are sustained insofar as above and are otherwise overruled.

The judgment is reformed: 1) to award Smart interest at 6% on the $5,600 from March 13, 1970 (in amount of $1123.44); 2) to delete recovery of the $4,500; 3) to award Smart recovery of the $2,000; 4) to declare Smart's land free of any lien under the January 30, 1970 building contract between Smart and Petty.

The judgment is otherwise affirmed.

Costs of appeal are assessed ⅘ against Petty and USF & G, and ⅕ against Smart.

Reformed and affirmed.