623 F.2d 1032
 6 Fed. R. Evid. Serv. 1127
 DALLAS-FORT WORTH REGIONAL AIRPORT BOARD, a Joint Agency of
the City of Dallas, Texas, and the City of Fort
Worth, Texas, Plaintiff-Appellee Cross-Appellant,
v.
COMBUSTION EQUIPMENT ASSOCIATES, INC. and Fidelity and
Deposit Company of Maryland, Defendants-Appellants
Cross-Appellees.
 No. 78-2781.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 13, 1980.
 
 Harold Hoffman, Donald C. McCleary, Dallas, Tex., for Combustion equipment co.
 James K. Peden, III, Frank L. Skillern, Jr., Dallas, Tex., for Fidelity and Deposit Co. of Maryland.
 Charles C. Wells, C. Merrill Bierfeld, Asst. City Attys., Dallas, Tex., for plaintiff-appellee cross-appellant.
 Appeals from the United States District Court for the Northern District of Texas.
 Before FAY, KRAVITCH and RANDALL, Circuit Judges.
 FAY, Circuit Judge:
 
 
 1
 This diversity action arose from a construction contract dispute between the Dallas-Fort Worth Regional Airport Board (Board) and Combustion Equipment Associates, Inc. (CEA). CEA had contracted to build an incinerator to burn the airport's solid wastes, but failed to fulfill its contractual obligations by the date initially specified in the written contract. The Board sued CEA for reimbursement of the payments made to CEA during the course of construction and for liquidated damages. CEA and its surety, Fidelity and Deposit Company of Maryland, now appeal from an adverse judgment of $816,987.41, granted to the Board after a month-long jury trial. On appeal, CEA claims that the Board, after waiving the written contract's specified completion date, breached the contract by evicting CEA from the jobsite without giving written notice and a reasonable time thereafter to complete construction. CEA also challenges several evidentiary rulings and jury instructions. Additionally, CEA claims that the evidence was insufficient to support either the verdict or the jury's responses to several interrogatories submitted to them by the court. Finally, CEA contends that the trial judge erred in selecting and computing prejudgment and postjudgment interest rates. On cross-appeal, the Board challenges the trial court's decision to overrule the jury's grant of liquidated damages to the Board. Because of conflicting jury responses to interrogatories, we reverse the trial court's denial of liquidated damages and remand for redetermination of whether CEA owes the Board contractual damages for the delay, and, if so, how much. Finding no reversible error in any of the other claims, we affirm the judgment in all other respects.
 
 FACTS AND PROCEEDINGS
 
 2
 Following competitive bidding, CEA executed a construction contract with the Board[1] on August 1, 1972. The contract required CEA to construct for the Board a solid waste disposal system in accordance with the job's plans and specifications. Incorporated by reference was CEA's bid proposal, which specified the composition of wastes to be incinerated by CEA's system. Thereafter, Fidelity and Deposit Company of Maryland issued a performance bond. On September 26, 1972, the parties executed a supplemental agreement, which modified the contract's requirements and reduced the contract price from $1,111,111 to $800,000. By June 25, 1973, the parties had reached a second supplemental agreement, which further modified the contractual requirements and extended the completion deadline to September 30, 1973. The second agreement also granted CEA an extra thirty days to make adjustments to comply with environmental protection regulations.
 
 
 3
 After construction began in late spring, 1973, the Board began making periodic payments which would eventually total $736,250. On January 18, 1974, long after the contract completion date, the Board notified CEA that no further payments would be forthcoming until CEA fulfilled its contractual obligations.
 
 
 4
 In response, CEA continuously reassured the Board that the incineration system would soon be operational. By May 1, 1974, however, CEA had begun to inform the Board that engineering problems spawned by installing an "innovative" system might delay completion. CEA nonetheless continued to promise full and prompt performance.
 
 
 5
 On May 11, 1974, however, a jobsite fire destroyed CEA's construction efforts. Notwithstanding CEA's renewed commitment after the fire to attain a functional system within eight weeks, CEA did not resume onsite construction efforts. Consequently, on June 28, 1974, the Board notified CEA and its surety of its intent to terminate the contract and turn construction responsibility over to the surety. At CEA's request, the parties conferred at the airport on July 26, 1974. At that conference they agreed that within fourteen weeks CEA would repair the fire damage and have the incineration system working.
 
 
 6
 By the fall of 1974, CEA had repaired the fire damage but had consistently refused to submit the incineration system to the Board's testing. By a letter dated December 12, 1974, the Board advised CEA that it would commence contract termination procedures immediately unless CEA's system passed the Board's testing, which was to be administered without fail on December 23, 1974. CEA agreed to the test. A full day of testing on the scheduled date revealed that the promised system still was not functional.
 
 
 7
 On February 5, 1975, the Board gave CEA and its surety notice of contract termination. On March 5, 1975, the Board evicted CEA from the jobsite.
 
 
 8
 The Board thereafter brought a diversity action against CEA and its surety. Pursuant to a jury verdict for the Board, the trial court granted the Board $636,000. Subtracting $100,000, the jury's estimate of the value of scrap left on the jobsite, from $736,000, the approximate sum of the periodic payments to CEA, gave that amount of recommended compensatory damages. Conflicting jury answers to interrogatories, however, led the trial court to overrule the jury's grant of $225,000 to the Board for liquidated damages. The court, granting both prejudgment and postjudgment interest on the Board's damages, rendered a final judgment against CEA totalling $816,987.41.
 
 CONTRACT TERMINATION
 
 9
 On appeal, CEA challenges the trial court's denial of a directed verdict or judgment n.o.v. for CEA. CEA contends that the Board's waiver of the written contract's specified deadline and the subsequent failure to set a new completion date completely foreclosed lawful unilateral termination of the contract. Accordingly, CEA claims that the Board's decision to evict CEA from the jobsite on March 5, 1975,[2] constituted a contract breach which prevented performance by CEA. Under CEA's rationale, the Board was responsible for CEA's failure to complete construction and should not collect damages from CEA, notwithstanding the eighteen-month delay from contractual deadline to final eviction.
 
 
 10
 In support of its contentions, CEA cites numerous cases which require one who has waived the initial completion date to give written notice of a new deadline and a reasonable time to complete before unilateral termination of the contract. In A. L. Carter Lumber Co. v. Saide, 140 Tex. 523, 168 S.W.2d 629 (1943), the Supreme Court of Texas found that by repeatedly accepting the buyer's late payments, a seller of certain realty had waived his contractual right to forfeit the sales contract. According to the court, only giving explicit notice of a renewed intention to enforce payment deadlines and providing a reasonable time for the buyer to comply would have restored the seller's right to strictly enforce the contract's forfeiture provisions. Accord, Hoover v. General Crude Oil Co., 147 Tex. 89, 212 S.W.2d 140 (1948); Young v. Fitts, 138 Tex. 136, 157 S.W.2d 873 (1942); Boddeker v. Olschewske, 127 Tex. 598, 94 S.W.2d 730 (1936). Moreover, this court reached a similar interpretation of Texas Law in Boswell v. United States, 123 F.2d 213 (5th Cir. 1941) (holding that when a performance deadline has been waived, one who would terminate for delay must give proper notice and a reasonable time to perform).
 
 
 11
 The Board directly controverts CEA's blanket assertion that written notice of a definite new deadline is an indispensable prerequisite to lawful contract termination, regardless of the time lapse between the original contract deadline and final eviction. To bolster its argument, the Board cites Texas cases which indicate that if no new completion date is set after the contract deadline has been waived, a reasonable time for compliance is implied. In Ryan v. Thurmond, 481 S.W.2d 199 (Tex.Civ.App.-Corpus Christi 1972, writ ref'd n.r.e.), the court that when the owner waived the original contract completion date and failed to set a new deadline, a reasonable time for completion was nonetheless implied. In J. W. Crowdus Drug Co. v. Nichols, 194 S.W. 484 (Tex.Civ.App. Dallas 1917), the court held that the drugstore owner who hired a repairman to fix a leaky basement could expect performance within a reasonable time, notwithstanding the owner's waiver of his right to terminate after the repairman's initial failure to timely fulfill his contractual obligations.
 
 
 12
 For the purpose of resolving whether notice was indispensable to lawful termination, we will assume that the Board waived the initial deadline and set no new completion date. The jury in fact did find that the Board waived the first deadline, and the Board admitted in its pleadings that no new date was set. However, the Board claims on appeal that the evidence indicates no actual deadline "waiver" in the technical legal sense, but only its decision to permit CEA's continued performance subject to a liquidated damages claim. Alternatively, the Board contends that letters and meetings late in the parties' contractual relationship effectively noticed a new deadline which gave CEA ample time to complete, especially since so much time had expired since the original deadline passed. Its admission that no new deadline was set, the board implies, was an alternative pleading offered to preserve a separate claim for liquidated damages from the original completion date, should the jury find no waiver of completion by that date. See Fed.R.Civ.P. 8(e)(2). Although we must consider these arguments later, we need not address their merits now, because we find that the Board's contract termination was lawful even if the Board did waive the first deadline and set no other.
 
 
 13
 Initially the precedent cited by CEA speaks forcefully. If strict performance as to time of completion has been waived, then notions of equity generally mandate adequate warning and opportunity to comply before terminating the other party's performance. See generally Young v. Fitts, 138 Tex. 136, 143, 157 S.W.2d 873, 876-77 (1942), quoting Ball v. Belden, 59 Tex.Civ.App. 29, 32, 126 S.W. 20, 22 (1910) (noting considerations of equity and fair dealing).
 
 
 14
 In some instances, however, reason would also suggest that passage of time alone might eventually give notice that the contract requirements should have been met. See, e.g., MacDonald & Payne Co. v. Metallic Arts of New England, Inc., 324 Mass. 353, 86 N.E.2d 516 (1949). See also 3A A. Corbin, Contracts § 723 at 382 (1960). Cf. Houston County v. Leo L. Landauer & Assoc., Inc., 424 S.W.2d 458, 463 (Tex.Civ.App.-Tyler 1968, writ ref'd n.r.e.) (holding that if no deadline has ever been set, a reasonable time to perform is implied). Accord, Ridglea Interests, Inc. v. General Lumber Co., 343 S.W.2d 490, 493-94 (Tex.Civ.App.-Ft. Worth 1961, writ ref'd n.r.e.); Palmer v. Katz, 210 S.W. 2d 451, 454 (Tex.Civ.App.-Eastland 1948, writ ref'd n.r.e.). In such instances, equitable considerations should govern the duration of an extension which itself was gained through the equitable doctrine of waiver.[3] Because we find no dispositive statement by the Supreme Court of Texas which governs the ultimate duration of an extension by waiver, we must turn to decisions of Texas intermediate appellate courts. See Allen v. A. G. Edwards & Sons, 606 F.2d 84, 87 (5th Cir. 1979). Equitable considerations import controlling force to the decisions cited by the Board, setting the limits for an extension by waiver. We find that Ryan and Crowdus Drug limit the duration of a waiver to a reasonable time, but apply only when no new deadline has been set. That reading allows us to mesh precedent which initially appeared contradictory.
 
 
 15
 The duration of the waiver being limited by these cases to a reasonable time, the lawfulness of CEA's termination without prior indisputable notice depends on the reasonableness of the extension's duration. Whether the time before termination comprised a reasonable period for completion is a jury question. Houston County v. Leo L. Landauer & Associates, Inc., 424 S.W. 2d 458 (Tex.Civ.App.-Tyler 1968, writ ref'd n.r.e). In this case, the jury response to the court's interrogatory is dispositive . The jury specifically found that the Board's decision to terminate CEA by March 5, 1975, was reasonable. Record, vol. II at 456.
 
 
 16
 Moreover, the record supplies ample support for that finding, defeating CEA's claim that the jury's finding was against the weight of the evidence. See Quinn v. Southwest Wood Products, Inc., 597 F.2d 1018 (5th Cir. 1979) (holding that on review, all inferences must be drawn in favor of the prevailing party). Indeed, the record reveals that for eighteen months the Board tolerated CEA's redundant but unfulfilled promises of prompt completion. According to the evidence, neither the incinerator nor any of its component parts was ever satisfactorily operational at the site, even at the date of final eviction. The jury could well have believed testimony by the Board's witnesses that no substantial modifications in performance requirements were made. Such circumstances indicate the Board's patient and helpful attitude toward CEA's prolonged efforts to create the functioning system they had promised. The Board's resignation to the inevitable failure of CEA's system was not unreasonable in that situation. Accordingly, we find that the termination was lawful.
 
 LIQUIDATED DAMAGES
 
 17
 That contract termination by the Board was reasonable and lawful does not guarantee the Board liquidated damages as well as damages for CEA's failure to perform. Courts have long recognized that if the party who can demand timely performance waives or prevents such performance, his conduct generally precludes recovery of liquidated damages. See, e.g., Maryland Steel Co. of Baltimore County v. United States, 235 U.S. 451, 458-60, 35 S.Ct. 190, 192-93, 59 L.Ed. 312 (1915); United States v. United Engineering and Contracting Co., 234 U.S. 236, 242-44, 34 S.Ct. 843, 845-46, 58 L.Ed. 1294 (1914); United States ex rel. Gillioz v. John Kerns Construction Co., 140 F.2d 792, 797-98 (8th Cir. 1944); United States ex rel. Johnson v. Morley Construction Co., 98 F.2d 781, 788 (2d Cir.), cert. denied, 305 U.S. 651, 59 S.Ct. 244, 83 L.Ed. 421 (1938); Goodrum v. State, 158 S.W. 2d 81, 87-88 (Tex.Civ.App.-Galveston 1942, writ ref'd w.o.m.). If a new deadline is established through notice or through expiration of a discretely measurable reasonable time, however, liquidated damages probably could accrue from the new completion date if the performing party fails to meet its contractual obligations by that time. Ryan v. Thurmond, 481 S.W. 2d 199, 206-07 (Tex.Civ.App.-Corpus Christi 1972, writ ref'd n.r.e.).
 
 
 18
 In the present case, the jury would have granted the Board $225,000 in liquidated damages, an amount equivalent to the contractual liquidated damages rate of $1000 per day for 225 days. Clearly, that recommendation was based on the jury's intent to apportion the liquidated damages according to the degree of each party's fault in causing delay. The recommendation implying apportionment of fault accorded with the jury's affirmative response to an interrogatory querying whether the Board contributed to the construction delay. Indeed, the jury found that the Board failed to coordinate the work of other contractors, failed to furnish a natural gas pipeline, and dumped construction debris into the solid waste disposal system. Moreover, the jury explicitly found that the Board waived the first deadline. In response to a subsequent interrogatory, however, the jury found that the Board's action engendered no delay. Thereafter, the jury recommended that liquidated damages be granted to the Board for a period equivalent to roughly half the delay from the original deadline to final eviction. Unable to construe the jury's recommendation consistently with jury responses to the interrogatories designed to determine proper apportionment of liquidated damages, the trial court refused to award any liquidated damages. We review the trial judge's decision cognizant that the jury's recommendation must be upheld if any fair reading can harmonize the interrogatory responses. See Atlantic & Gulf Stevedores v. Ellerman Lines, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962); Willard v. The John Hayward, 577 F.2d 1009, 1011 (5th Cir. 1978).
 
 
 19
 The Board's attempts on appeal to reconcile the jury findings return our attention to two of the arguments previously advanced to establish lawful contract termination. First, the Board suggests that the jury misapprehended the technical legal sense of "waiver" when it found that the Board waived the first deadline. According to the Board, the jury may have merely meant that the Board permitted CEA's continued performance for a reasonable period approximating 225 days, subject to the Board's ongoing claim for delay damages. Alternatively, the Board argues that even if it waived the initial deadline, it established through letters and meetings some new completion deadline from which the jury could have accurately measured liquidated damages.
 
 
 20
 Serious flaws with the Board's arguments impair the attempted reconciliation of the jury's findings. First, the evidence gives ample support for a jury finding of genuine waiver by the Board: logically CEA would not have stayed on the job for so long after the original deadline had passed, accumulating damages of $1000 per day, had it not deemed the original deadline waived. The alternative argument that a new deadline somehow was set meets quick defeat by the Board's own pleading that no new completion date was ever set. Concerning the liquidated damages issue, the Board's argument was not posed in the alternative; the Board insisted that no other deadline was set. Neither the Board's nor any other arguments suggest a coherent reconciliation of the jury's responses to the court's interrogatories. Irreconcilable jury answers to special interrogatories mandate remand for a new trial on the issue of liquidated damages. See Willard v. The John Hayward, 577 F.2d 1009 (5th Cir. 1978).
 
 EVIDENTIARY RULINGS
 
 21
 Appellant CEA next challenges the trial court's refusal to admit evidence that CEA had successfully designed and constructed another incinerator in another city after it failed to complete the Dallas-Fort Worth project. The evidence proffered would have shown that, subsequent to CEA's final eviction, CEA built and briefly operated in Brockton, Massachusetts, another incinerator bearing some resemblance to the Dallas-Fort Worth project. Apparently CEA sought to show that the Board unlawfully and unfairly aborted CEA's efforts when their innovation was "on the brink of success," some eighteen months after the contract completion deadline had passed.
 
 
 22
 The district judge's decision to exclude evidence of such marginal relevance was hardly an abuse of discretion. See Wright v. Hartford Accident & Indemnity Co., 580 F.2d 809 (5th Cir. 1978); Shamrock Hilton Hotel v. Caranas, 488 S.W.2d 151, 154 (Tex.Civ.App.-Houston (14th Dist.) 1972, writ ref'd n.r.e.). Moreover, CEA itself had requested by a pretrial motion in limine the exclusion of all evidence of CEA's other incinerator construction projects, several of which were then the subjects of other lawsuits around the country. Accordingly, we find no reversible error in the exclusion of evidence pertaining to the purportedly successful incinerator in Brockton, Massachusetts.
 
 JURY INSTRUCTIONS AND INTERROGATORIES
 
 23
 Appellant CEA next contests several of the trial court's instructions and interrogatories to the jury. In response, the Board contends that CEA's objections at trial were untimely and consequently not subject to appellate review. See Fed.R.Civ.P. 51.[4] The transcript of in-court proceedings does not clearly reveal when CEA first articulated its objections, but the trial court, apparently recognizing that ambiguity, entered an explicit order establishing the timeliness of CEA's objection. Record, vol. III at 527. By that order the trial judge has satisfied us that the objective of rule 51 has been met. The rule does not mandate formal adherence so long as the trial judge understands the objecting party's position and is informed of possible error so that he has an opportunity to correct them. Wallace v. Ener, 521 F.2d 215 (5th Cir. 1975).
 
 
 24
 Material Contract Requirements. Appellant CEA's first challenge to the jury charge and interrogatories questions the adequacy of the court's contract interpretation for the jury. Specifically, CEA argues that the judge neglected to define "operable disposal system" and failed to specify the contractual waste composition, the required rate of incineration, or the deadline for performance. CEA argues further that the court erroneously failed to mention the diminished performance requirements under the first supplemental agreement. Our review of these aspects of the record reveals that the judge provided an adequate interpretive framework for the jury to weigh the contested factual issues CEA raises here. See Cook Industries, Inc. v. Community Grain, Inc., 614 F.2d 978, 980 (5th Cir. 1980). Accordingly, we find these contentions manifest no reversible error.
 
 
 25
 Lawfulness of Termination. CEA next contests the adequacy of that phase of the trial court's charge dealing with the lawfulness of the Board's contract termination. CEA claims that the jury lacked proper instructions on CEA's affirmative defense of waiver and on the proper circumstances under which the Board could terminate. Review of the entire jury charge reveals that the jury obtained ample instruction on the elements of CEA affirmative defense, including several of CEA's requested instructions. Moreover, the court properly inquired of the jury whether the Board's decision to terminate the contract was reasonable. That question was the crux of the factual dispute between the parties. If the Board had waived the first deadline and had failed to set another, termination would be lawful only if a reasonable period for completion had expired. See Ryan v. Thurmond, 481 S.W.2d 199 (Tex.Civ.App.-Corpus Christi 1972, writ ref'd n.r.e.). No reversible error arises from this phase of the charge.
 
 
 26
 Damages. CEA next contends that reversible error occurred because the district judge failed to instruct the jury on the proper measure of damages. Review of the charge does reveal only sparse instruction on what measure of damages the jury could apply to recompense the Board for CEA's breach. Nonetheless, we believe any error in the charge to be harmless, because truncation of the charge here did not impair CEA's substantial rights. See Weakley v. Fishbach & Moore, Inc., 515 F.2d 1260, 1265 (5th Cir. 1975); Martinez v. Rodriguez, 394 F.2d 156, 157 (5th Cir. 1968). The jury recommended damages nearly equivalent to the total periodic payments made by the Board, less scrap value of jobsite remains. That finding clearly reflects the jury's finding that CEA's breach by nonperformance warranted termination. Breach warranting termination was the subject matter of controversy, not contract rescission by mutual consent, as CEA suggests. The jury thus clearly perceived the nature of the controversy, and awarded damages for nonperformance in accordance with their resolution of it.
 
 
 27
 We also find that damages for nonperformance were adequately distinguished from liquidated damages for delay by instruction and by interrogatory. Moreover, we have reviewed all the instructions as a whole and find them overall an adequate statement of pertinent law. See Harless v. Boyle-Midway Division, American Home Products, 594 F.2d 1051, 1054 (5th Cir. 1979). Accordingly, we find no reversible error in the trial court's instructions.
 
 PREJUDGMENT INTEREST
 
 28
 Finally, appellant CEA challenges the trial court's award of prejudgment interest to the Board on the $636,000 of compensatory damages. CEA claims that contractual damages were not determinable at the time of the Board's injuries so that Texas law bars any award of prejudgment interest. CEA errs in its assertion. The crucial determinant of whether prejudgment interest may be awarded "appears to be whether or not the measure of recovery of claim, and not necessarily the amount of damages, is fixed by conditions existing at the time the injury arose or was inflicted." Metal Structures Corp. v. Plains Textiles, Inc., 470 S.W.2d 93, 103 (Tex.Civ.App.-Amarillo 1971, writ ref'd n.r.e.) (emphasis added). See Davidson v. Clearman, 391 S.W.2d 48 (Tex.1965); Watkins v. Junker, 90 Tex. 584, 40 S.W. 11 (1897). At the moment of CEA's final eviction, the measure of the Board's contract damages was fixed: having receiving nothing of what it had bargained for, the Board was entitled to reimbursement of all the progress payments it had made. Even the scrap value of what CEA left at the site was measurable at the moment of eviction, although no price had yet been attached by a jury.
 
 
 29
 The cases CEA cites to show that the Board's damages were not ascertainable are inapposite. In each of those cases, the proper measure of recovery remained a question for judge or jury to resolve. In Traveler's Indemnity Co. v. Pollard Friendly Ford Co., 512 S.W.2d 375 (Tex.Civ.App.-Amarillo 1974), the trial court had denied prejudgment interest to an insured whose place of business had been devastated by a tornado. The appellate court held that
 
 
 30
 ". . . it was not clearly established that the measure of recovery was fixed by conditions existing at the time of the injury. There were alternatives available to the insured with respect to his conduct of the business following the tornado, i.e., whether to move the business to another location, or seek to retain and restore the business and premises at the original location, all of which were involved and constituted significant factors in making a determination of the existence and the extent of liability." Id. at 383-84.
 
 
 31
 Accord, Zummo Cattle Co. v. Millard, 482 S.W.2d 17 (Tex.Civ.App.-Tyler 1972, writ ref'd n.r.e.) (measure of recovery held not determinable when defendant feedlot company allegedly failed to provide adequate shelter and feed for plaintiff's cattle); Hull v. Freedman, 383 S.W.2d 236 (Tex.Civ.App.-Fort Worth 1964, writ ref'd n.r.e.) (measure of recovery for defendant's withholding of oil royalties held not determinable because it was unclear how much oil had been withdrawn through well).
 
 
 32
 No such uncertainties clouded the damages issue in the present case. Rather, the present case parallels Smart v. United States Fidelity & Guaranty Co., 513 S.W.2d 291 (Tex.Civ.App.-Waco 1974, writ ref'd n.r.e.). The court in Smart affirmed the trial court's grant of prejudgment interest to an owner who sued a building contractor for failure to complete the office building he had agreed to construct. The circumstances in Smart, strikingly similar to those in the present case, compel a similar result. Prejudgment interest was properly awarded in the present case.
 
 
 33
 CEA next argues that even if prejudgment interest was appropriate, the trial court awarded it at improper rates. The judge granted 6% prejudgment interest from the date of CEA's final eviction to September 1, 1975, the effective date of a change in certain Texas statutory interest rates. From September 1, 1975, until judgment, the court awarded 9% prejudgment interest. Additionally, the judge granted postjudgment interest, which according to statutory provision accrues at 9%.
 
 
 34
 CEA's challenge to the interest award centers on the district judge's decision to increase the prejudgment interest in accord with the statutory change. CEA claims that the judge incorrectly used Tex.Civ.Stat.Ann. art. 5069-1.05 (Vernon Supp.1978), the Texas postjudgment interest statute to fix the prejudgment interest award. Instead, CEA contends, the statute fixing prejudgment interest at 6% for written contracts and open accounts, Tex.Rev.Civ.Stat.Ann. art. 5069-1.03 (Vernon 1971), should have been applied. Because the district judge used the postjudgment interest statute to calculate interest, the 1975 statutory change in section 1.05 increased from 6% to 9% the rate of interest CEA had to pay. CEA contends that any prejudgment interest owed should have been calculated at the constant rate of 6%, since the rate in section 1.03 was never changed.
 
 
 35
 We cannot say that the trial judge abused her discretion in choosing to apply section 1.05 rather than section 1.03. Texas caselaw clearly permits courts at their discretion to award equitable prejudgment interest. Phillips Petroleum Co. v. Stahl Petroleum Co., 569 S.W.2d 480 (Tex.1978).[5] If a court grants statutory prejudgment interest pursuant to section 1.03, then that section fixes the applicable rate at 6%. See Republic National Bank of Dallas v. Northwest National Bank of Fort Worth, 578 S.W.2d 109 (Tex.1979). If a court chooses to award equitable prejudgment interest, however, the proper rate is less clear. Texas courts have not spoken with a uniform voice in deciding what rates to apply to various types of equitable prejudgment interest awards, although all agree that any statutory change in rates operates only prospectively. E.g., Haag v. Pugh, 545 S.W.2d 22 (Tex.Civ.App.-Eastland 1976). Some have held that section 1.03 makes 6% the legal rate of interest applicable to every prejudgment interest award. Others have chosen section 1.05 as the standard from which the proper rate should be derived by analogy.
 
 
 36
 The Supreme Court of Texas has not yet directly confronted the issue, but has permitted prejudgment interest awards of both 6% and 9% to stand. The decisional trend portends express approval of a 9% rate in appropriate circumstances. In Maxey v. Texas Commerce Bank of Lubbock, 580 S.W.2d 340 (Tex.1979), the court explicitly declined to express any opinion on the intermediate appellate court's holding that prejudgment interest was limited to a 6% rate. Next, the court on rehearing in Howze v. Surety Corporation of America, 584 S.W.2d 263 (Tex.1979), reformed the judgment to include prejudgment interest at 6%. The facts in Howze, involving wrongful detention of money due under a guaranty contract, fell squarely into the circumstances contemplated by section 1.03, and the prayer was for only 6%. Most recently, the court in Allstate Insurance Co. v. Chance, 590 S.W.2d 703, 704 (Tex.1979), approved 9% prejudgment interest on part of an award to an insured who sued the insurer to recover for a fire loss.
 
 
 37
 Texas intermediate appellate courts which have reached the issue generally have found the statutory prejudgment interest rate applicable. E.g., Pecos County State Bank v. El Paso Livestock Auction Co., Inc., 586 S.W.2d 183 (Tex.Civ.App.-El Paso 1979, writ ref'd n.r.e.); Booker Custom Packing Co., Inc. v. Caravan Refrigerated Cargo, Inc., 575 S.W.2d 329 (Tex.Civ.App.-Dallas 1978). Other decisions predating the Supreme Court of Texas Phillips decision, however, awarded 9% prejudgment interest. E.g., Earl Hayes Rents Cars & Trucks v. City of Houston, 557 S.W.2d 316 (Tex.Civ.App.-Houston (1st Dist.) 1977, writ ref'd n.r.e.); Haag v. Pugh, 545 S.W.2d 22 (Tex.Civ.App.-Eastland 1976). The court in Larcon Petroleum, Inc. v. Autotronic Systems, 576 S.W.2d 873 (Tex.Civ.App.-Houston (14th Dist.1978), recognized the absence of any firm decisional base for choosing a prejudgment interest rate, and concluded that as the trial court had discretion to award equitable prejudgment interest, so ought the judge have discretion to choose the applicable rate. Id. at 879.
 
 
 38
 We find the Larcon Petroleum court's reasoning persuasive, and no prior decision of this court would bar its institution. Compare Larcon Petroleum, Inc. v. Autotronic Systems, 576 S.W.2d 873 (Tex.Civ.App.-Houston (14th Dist.) 1978) with South Central Livestock Dealers, Inc. v. Security State Bank of Hedley, Texas, 614 F.2d 1056, 1062 (5th Cir. 1980) (allowing prejudgment interest at "legal rate") and Rogers v. Aetna Casualty and Surety Co., 601 F.2d 840, 846 (5th Cir. 1979) (reforming judgment to include 6% prejudgment interest on damages awarded in insurance coverage dispute). Moreover, this reasoning comports with another federal court's decision in Meyers v. Moody, 475 F.Supp. 232, 250 (N.D.Tex.1979). Accordingly, we conclude that choice of interest rates lay in the trial court's discretion. Finding no abuse of discretion, we uphold the district judge's grant of 9% prejudgment interest. Additionally, we find no reversible error in the judge's calculation of that interest. We therefore affirm the prejudgment interest award.
 
 CONCLUSION
 
 39
 Because of conflicting jury responses to interrogatories, we must reverse the trial court's denial of liquidated damages and remand for redetermination of whether CEA owes the Board damages for the delay, and if so, how much. In all other respects the judgment of the trial court is affirmed.
 
 
 40
 REVERSED AND REMANDED IN PART, AFFIRMED IN PART.
 
 
 
 [1]
 "The Board is a Texas public governmental agency charged and empowered by the Cities of Dallas and Fort Worth with the construction, operation and maintenance of the Dallas-Fort Worth Regional Airport." Appellees Brief at 3
 
 
 [2]
 CEA depicts the March 5 eviction as sudden and unanticipated. The record evidence contradicts their assertion. Correspondence between the parties clearly reveals February 5, 1975, as the actual date of contract termination. The Board claims it allowed CEA to remain on the job for a month as the surety's possible substitute choice to complete construction. Regardless of the reason CEA stayed on the job, CEA had ample warning of pending final eviction
 
 
 [3]
 We caution that this conclusion in no way detracts from the general rule that equity demands notice and an opportunity to comply after waiver. Only when it becomes inequitable to stand on the right to notice can the rule of reasonableness control. The comparative equities which in the past have governed application of the notice rule continue to control
 
 
 [4]
 Fed.R.Civ.P. 51 provides:
 At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.
 
 
 [5]
 In Phillips, the Supreme Court of Texas abolished the artificial distinctions Texas courts had devised to award prejudgment interest although no money due under contract or open account had been detained. Previously, courts could explicitly award interest eo nomine ("under that name") under section 1.03 only for wrongful detention of money due under a written contract or open account. Other circumstances compelling an equitable grant of prejudgment interest, however, led Texas courts to award interest "as damages," thereby circumventing section 1.03 by calling the interest award "damages." The Phillips court recognized the need to approve explicitly such exercises in equity, agreeing that parties ought not to have the use of money without paying for it